**ROBERTA B., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 03–1871C.**

United States Court of Federal Claims.

Aug. 20, 2004.

W. Randolph Teslik and C. William Frick, Akin Gump Strauss Hauer & Feld, LLP, Washington, D.C., for plaintiff.

Andrew P. Averbach, with whom were Assistant Attorney General Peter D. Keisler, Director David M. Cohen, and Assistant Director Robert E. Kirschman, Jr., Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant.

## ORDER

WIESE, Judge.

Plaintiff is a now-retired employee of the Central Intelligence Agency (the "CIA") who is suing here to recover monies withheld from her salary pursuant to the CIA's claim for reimbursement of overseas travel expenses that it had previously paid on her behalf. The case is now before the court on defendant's motion to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted. The court heard oral argument on August 5, 2004, at the conclusion of which it entered a bench ruling denying defendant's motion. This order formalizes that ruling.

## FACTS

In 1996, pursuant to her request to fulfill a third tour of overseas duty, plaintiff was

assigned to a United States diplomatic compound in a city in eastern Asia. In connection with this assignment, plaintiff was required to execute a "Service Abroad Agreement" which provided, *inter alia,* that if she failed to complete a twelve-month tour of duty, she would be obligated to reimburse the government for her travel and relocation expenses unless, in the judgment of agency officials, her early departure was deemed "necessary for official reasons, or for personal reasons of significant interest to the government." In that event, reimbursement of expenses could be waived.

Plaintiff alleges that upon arrival at her assigned duty station in April 1997, she was confronted with unsafe and unlivable housing and work conditions. In her amended complaint, she describes the housing conditions as follows: "The house assigned to her was uninhabitable. The house was situated on a desolate street over 20 minutes by car from the Consulate, adjacent to an abandoned house and across from a junk yard. There were minimal security measures in place on the street or in the home: no alarm and no security patrols. The building had neither grills nor bars on any of the windows or doors and was easily accessible to intruders. . . . Inside, the house was in intolerable condition. . . . Snake skins and dead insects littered the quarters." Plaintiff refused to move into the house. Instead, she spent the next several weeks searching for alternative housing but was ultimately unsuccessful. The amended complaint goes on to say that in addition to an intolerable housing situation, the compound (plaintiff's work site) was also "profoundly unsafe," in that it was guarded only by a wall that easily could be scaled from an abutting structure and that lacked the protection of both barbed wire and United States security personnel.

Confronted with these unsatisfactory conditions and, in the words of the complaint, a "[b]ase management [that] showed little concern for security and personnel safety," plaintiff returned to the United States on May 22, 1997. Prior to her departure, plaintiff requested that her return "short-of-tour" be deemed to be at the convenience of the government. Base management, however, declined to make such a determination.

Upon her return to the United States, plaintiff explained to management personnel the reasons that had prompted her early departure and again requested that her departure be deemed to be at the convenience of the government. The chief of the geographic area division, however, concluded that plaintiff was not entitled to the relief she was seeking. Thereafter, the matter was referred to the Director of Human Resource Management for an initial formal decision.

On August 6, 1997, the Director determined that plaintiff's early departure was not for the convenience of the government and that she had breached her service agreement and was thus responsible for travel and transportation expenses, an amount identified as $42,859. Dissatisfied with this result, plaintiff appealed the Director's decision to the Agency's Deputy Director of Administration on November 5, 1997, asking for a waiver of her obligation to repay the relocation expenses.

On May 21, 1998, the Deputy Director of Administration sustained the CIA's earlier determination that plaintiff had breached her service agreement and thus was liable for all expenses incurred in relocating to and from her overseas post. After additional proceedings before the Deputy Director of Administration, that office informed plaintiff on September 28, 1998, that the CIA had established the debt owed and that plaintiff could seek review of that decision before the CIA's Office of Finance and Logistics.

Plaintiff's appeal to the Office of Finance and Logistics was similarly unsuccessful. That office conducted an oral hearing on August 19, 1999, and in November 1999, issued its final written decision rejecting plaintiff's claim for relief from the debt assessed against her. In substance, the CIA concluded that plaintiff had acted in haste in that she had experienced no real threats to her personal safety and had not availed herself of the various channels of communication open to her through which to resolve her concerns. In addition, the agency explained: "During your brief time at [the overseas duty station] the government continued to make good faith

attempts to satisfy your requirement for secure and comfortable housing that was commensurate with your rank, which was the only reason you cited at that time for your early departure."

The final administrative step pursued by plaintiff was an appeal to the Administrator of the General Services Administration.[1] On August 3, 2001, the Administrator, acting through the General Services Administration Board of Contract Appeals, issued a decision upholding the CIA's debt determination: "We deny the claim, as we conclude that the agency did not act arbitrarily or capriciously in deciding that claimant had failed to show sufficient cause under statute and regulation for release from the conditions of her service abroad agreement." 2001-2 B.C.A. (CCH) ¶ 31, 565.

On August 6, 2003, plaintiff filed suit in this court. In her complaint, plaintiff asserts two grounds for relief. In Count I, titled "Review of Agency Action," plaintiff asserts that the CIA's determination of debt was arbitrary and capricious and not entitled to finality because the CIA (i) based its decision on insufficient evidence and improper procedure ("The Agency failed to conduct any investigation into Ms. B's allegations of mismanagement and safety violations at the East Asian base, and failed to question or interview base management."), and (ii) improperly declined to find the violations of the Department of State housing and security regulations that plaintiff had alleged as offering sufficient "official reasons" for her early departure. In Count II, titled "Breach of Contract," plaintiff asserts that "the housing, security and management deficiencies" she experienced at the overseas base breached the government's contractual obligations of good faith and fair dealing and, simultaneously, interfered with her own ability to perform under the contract.

---

1. Pursuant to the General Accounting Office Act of 1996, Pub.L. No. 104–316, § 202(n), 110 Stat. 3826, 3843, amending 31 U.S.C. § 3702, the Comptroller General's authority to review travel and relocation claims of federal civilian employees was transferred to the Administrator of the General Services Administration. The relevant statute, 31 U.S.C. § 3702(a)(3) (2000), reads as follows:

## DISCUSSION

### A.

Pursuant to 28 U.S.C. § 2501 (2000), "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." A claim first accrues "when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988).

Relying on this rule of law, defendant now argues that plaintiff's cause of action accrued in early May 1997, when base management advised plaintiff that her early return to the United States would not be deemed as being at the government's convenience. As of that date, defendant maintains, plaintiff became aware that she would not be entitled to reimbursement of her travel and relocation expenses and would, in fact, be liable for any travel expenses that the CIA had incurred on her behalf. Since plaintiff did not file the instant suit until August 2003, more than six years after she had first learned of the government's position regarding her return "short-of-tour," defendant contends that the suit is time-barred.

■■■ We do not accept this argument. To come within the scope of our general jurisdictional statute, 28 U.S.C. § 1491 (2000), a claim must be one for money presently owing, that is, money that is claimed to be due from the government under the terms of a particular statute or regulation or money alleged to have been improperly collected from the claimant by the government. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl.

(a) Except as provided in this chapter or another law, all claims of or against the United States Government shall be settled as follows:

*   *   *   *   *   *

(3) The Administrator of General Services shall settle claims involving expenses incurred by Federal civilian employees for official travel and transportation, and for relocation expenses incident to transfers of official duty station.

599, 372 F.2d 1002, 1007 (1967). Pursuant to this jurisdictional requirement, then, plaintiff's cause of action did not accrue until the government, by administrative offset, failed to pay her the full amount of the salary that she claimed was due. Thus, plaintiff's suit here, while it remains at bottom a suit to obtain review of agency action, is recast under our jurisdictional statute as a suit to enforce the payment of money owed under a pay statute. Since the offsets against plaintiff's salary were not effected until 2002, her claim did not arise until that time; hence, her suit in this court, filed in August 2003, is timely.[2]

### B.

Defendant next argues that the doctrine of res judicata bars plaintiff from relitigating her claim in this court. Res judicata, or what is now more generally referred to as "claim preclusion," refers to the limitation imposed in a second action barring litigation of matters that were or could have been addressed in a prior action. Restatement (Second) of Judgments, ch. 1, at 1 (1982). Underlying the doctrine of res judicata is the recognition that societal interests demand that finality be accorded to judgments entered on disputes that were fully and fairly litigated. Defendant maintains that plaintiff's case was heard in full before the General Services Administration Board of Contract Appeals and, therefore, no further proceedings should be heard before this court. We, however, decline to so rule.

■ Under the principles of res judicata, an adjudicative determination of an administrative agency is accorded the same finality and preclusive effect as the judgment of a court. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); Restatement (Second) of Judgments § 83. Fundamental to the application of res judicata in either

context is the requirement that the prior litigation have afforded the contending party an adequate opportunity to litigate. *Utah Constr.*, 384 U.S. at 422, 86 S.Ct. 1545. As the Restatement phrases it, "the question is whether the opportunity was 'full and fair.'" Restatement, ch. 1, at 9.

To satisfy the requirement of a full and fair hearing, an adjudication must at a minimum allow a litigating party to present evidence and legal argument in support of its position as well as provide it a "fair opportunity to rebut evidence and argument by opposing parties." Restatement § 83(2)(b). Examination of the record now before us fails to reveal when, if ever, plaintiff was given the opportunity to rebut the evidence against her.

■ The General Services Administration Board of Contract Appeals did not base its decision on new evidence introduced before that tribunal; there was no trial conducted before the Board. Rather, the Board drew its facts from a review of the administrative record that had been developed over the course of plaintiff's pursuit of her claim before the agency. Included as part of that record was the oral hearing held in conjunction with plaintiff's appeal to the Office of Finance and Logistics. At that hearing, plaintiff was afforded the opportunity to speak on her own behalf and to respond to questions asked by the hearing official. The hearing did not, however, give plaintiff the opportunity to challenge the merits of the case against her either by cross-examining opposing witnesses or through the discovery of documents supportive of her position. The oral hearing, in other words, did not give plaintiff a full opportunity to establish the merits of her claim. Since the Board based its decision entirely on the facts contained in the administrative record, the procedural shortcomings of that record are necessarily incorporated into the Board's decision. On

---

**2.** At oral argument, the court considered whether plaintiff's suit could be viewed as a suit for the recovery of an illegal exaction, a form of action within the traditional framework of the court's jurisdiction under 28 U.S.C. § 1491. We decline, however, to so identify this case. An illegal exaction is a suit in which "the value sued for was improperly paid, exacted, or taken from the

claimant in contravention of the Constitution, a statute, or a regulation." *Id.* This suit, by contrast, does not involve the recovery of money paid over to the government pursuant to an allegedly unlawful demand; it is instead a suit for the recovery of money that is claimed to have been wrongfully withheld.

account of those underlying deficiencies, then, the Board's decision cannot command the respect necessary to support the application of res judicata. *Cf. Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 735 (2d Cir.2001) (identifying the lack of opportunity for cross-examination and discovery as among the factors for denying preclusive effect to the determination of a state agency denying a disability claim).

### C.

■ Finally, defendant alternatively argues that plaintiff has failed to state a claim upon which relief can be granted. As to Count I, which challenges the reasonableness of the CIA's decision to recover travel expenses through a salary offset, defendant argues that such a determination is committed to agency discretion and therefore is not justiciable. In support of its argument, defendant points to the language of the Service Abroad Agreement which obligated plaintiff, upon failure to complete the agreed-upon tour of duty abroad, to reimburse the government for all travel and transportation expenses incurred on her behalf unless "agency officials determine that [the] early departure is necessary for official reasons, of for personal reasons of significant interest to the government." In defendant's view, this language places the issue of reimbursement entirely within the agency's discretion, beyond the purview of any judicially enforceable standards. Since the court, in defendant's view, has no law to apply, Count I must be dismissed for failure to state a claim upon which relief can be granted.

This too is an argument we cannot accept. Although the language of the agreement is indeed broad, its exercise is not without limitation—at the very least, agency officials must respect rules and regulations prescribed for the benefit of federal employees serving abroad. Among such regulations are those plaintiff alleges were violated here— the housing policies and standards set forth in the Department of State's Housing Abroad Program, 6 Foreign Affairs Manual (FAM) § 720 (2003). These regulations, which are applicable to all United States citizens assigned to United States' missions abroad,

enumerate the specifics of a housing program intended to provide housing that is "safe," "secure," and "adequate to meet the personal and professional requirements of employees at a cost most advantageous to the U.S. Government." 6 FAM § 721.1(a). In particular, these regulations define adequate housing "as that comparable to what an employee would occupy in the Washington, DC Metropolitan Area, with adjustments for family size and locality abroad." *Id.* It is this last-quoted text that plaintiff maintains the agency failed to honor. Even with locality adjustments taken into account, the housing she was offered, plaintiff maintains, was deplorable and far short of what the regulations require.

■ Defendant, for its part, does not dispute the applicability of these regulations. Defendant maintains, however, that the standard the regulations declare—"housing ... comparable to ... Washington, DC ... with adjustments for family size and locality abroad"—is an aspirational rather than a mandatory guideline. While defendant's contention may prove to be correct, that issue, however, is one for another day. Count I is now before the court on a motion to dismiss for failure to state a claim, not summary judgment. Thus, the only question to be decided at this juncture is whether, upon the facts alleged and read in a light most favorable to plaintiff, plaintiff has stated a viable basis for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(observing that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). The relevant query, in other words, is whether, on the facts pled, the law affords plaintiff a remedy. The answer is yes. Plaintiff's assertion that the housing she was offered failed to meet the requirements of a mandatory regulation, if sustained on the merits, would render the government's salary offset unreasonable and correspondingly would establish plaintiff's right to a judgment in her favor. Defendant's motion to dismiss Count I is therefore denied.

■ Turning to Count II, plaintiff's breach of contract claim, defendant argues that because federal employees hold their positions by appointment and not by contract, a contract theory cannot serve as the foundation for a recovery here. Simply put, defendant maintains that there is no contract that could have been breached.

While defendant is correct in stating that federal employees attain their positions by appointment and not by contract, *see Hamlet v. United States*, 63 F.3d 1097, 1101–02 (Fed. Cir.1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996), the invocation of that principle here is misplaced. We are concerned not with the nature of plaintiff's basic employment relationship with the CIA, but rather with a wholly voluntary aspect of that employment—service abroad. Such service, as the Service Abroad Agreement evidences, was subject to its own special terms and conditions apart from those governing the employment relationship in general. In particular, the agreement expresses the parties' understanding—"It is understood" are the agreement's opening words—that plaintiff agrees "to serve the period of service abroad described … below" and "that the government is obligated to return you, your dependents and your household and personal effects upon the satisfactory completion of this period" with "allowable expenses [to] be determined in accordance with agency regulations." Clearly, these words reflect an exchange that is promissory in character or, in other words, a contract. *Maher v. United States*, 314 F.3d 600, 603 (Fed.Cir.2002), *cert. denied*, 540 U.S. 821, 124 S.Ct. 133, 157 L.Ed.2d 40 (2003) (defining a contract as "an exchange of promises—through commitments to act or refrain from acting in a specified way—that are evidenced in a writing or are inferable from conduct").

Defendant goes on to argue that even if we should find a contract here, the agreement's provisions make no reference to housing adequacy and, thus, cannot support plaintiff's claim of breach. Plaintiff's claim, however, is not premised on any express promise in the agreement. Rather, the claim is that the CIA abused the authority granted it by the contract to recover travel expenses when it failed to recognize that plaintiff had a legitimate expectation, independent of the contract, to be provided with adequate housing. That expectation, as we explained earlier, is based on regulation and, as such, its fulfillment was a condition to plaintiff's performance that agency officials were not free to ignore. The failure to provide plaintiff with adequate housing was thus an excusable condition for her non-performance. The agency's failure to acknowledge that condition, if proven true, would render the salary offset arbitrary. Therefore, defendant's motion to dismiss Count II is denied.

Despite allowing Count II to remain in this case, however, we do not think that the contract theory it espouses adds any meaningful dimension to plaintiff's suit. Whether the theory of recovery pursued here is breach of contract or failure to pay money owed under a statute, the operative facts remain the same. To prevail under either theory, plaintiff must prove that the agency decision to reclaim the payment of her travel expenses through salary offset was arbitrary, capricious, or otherwise erroneous as a matter of law. Further proceedings by way of summary judgment will be required.

## CONCLUSION

For the reasons discussed during the oral argument held on August 5, 2004, and as further explained in this order, defendant's motion to dismiss the complaint for lack of subject matter jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted, is denied.