Sarah R. DACHMAN, Plaintiff,

v.

UNITED STATES, Defendant.

No. 05–772C.

United States Court of Federal Claims.

Oct. 4, 2006.

---

Sarah R. Dachman, Silver Spring, Maryland, pro se.

Kent G. Huntington, Trial Attorney; David M. Cohen, Director, Commercial Litigation Branch; Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. Lisa M. Flynn, United States Department of Health and Human Services, of counsel.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Plaintiff, Sarah R. Dachman, a medical doctor, is a former employee of the Food and Drug Administration (FDA), an agency in the Department of Health and Human Services (HHS). In July, 1988, plaintiff began employment with the defendant and signed her first "Agreement to Receive an Allowance Under the Federal Physicians Comparability Allowance [PCA] Program," pursuant to 5 U.S.C. § 5948 (2000).[1] Beginning in July, 1994, and continuing until Dr. Dachman's removal from the FDA, plaintiff and her employer had disagreements regarding her time, attendance and performance. Plaintiff alleges that in July, 1994, her super-

---

1. The PCA program reflects the government's concern with high turnover rates of skilled professionals seeking higher salaries in the private sector, and exists to encourage, by means of financial compensation, longer tenure of certain skilled professionals. See 5 U.S.C. § 5948.

visor, Dr. William Schwieterman, wrongfully accused plaintiff of leaving a threatening message on her supervisor's voice mail. Plaintiff states she was arrested for leaving the threatening message, but that criminal charges were later dismissed. Plaintiff alleges that these wrongful actions led to her placement on administrative leave with pay and the agency's proposal to suspend her. Plaintiff further alleges that even after she demonstrated, through voice analysis, that she did not leave any threatening message, "[o]ver the next 3 years the Agency continued pursuing Dr. Dachman, reassigning [her] to a section for which she did not have adequate specialty training, refusing to let her go on a detail to a division that wanted her, placing her and her children under surveillance at their home, suspending her again, placing her on leave restriction, which made it arduous to get religious compensatory time . . . and ultimately terminating her in February of 1998."

The record reflects that the plaintiff was informed by agency memorandum dated September 23, 1997 that she was placed in a non-duty status, with pay (administrative leave), for inappropriate and unacceptable conduct at work.[2] Plaintiff was given several instructions as a condition of her status, including requirements to check in by telephone every day at 10:00 a.m., to remain available to the Agency, and to submit requests for leave. Plaintiff was informed that if she failed to follow these instructions, she would be charged Absent Without Leave (AWOL) for the period of unavailability.

Plaintiff signed her last PCA Agreement, which is the one at issue in this litigation, on September 27, 1996. Subdivision 6 of this PCA agreement stated:

(b) That in the event I voluntarily or because of misconduct fail to complete the second year of a two-year agreement in a position which entitled me to receive the allowance, I will refund the amount of the allowance I received under this agreement for the 26 weeks of service immediately

preceding the termination unless the Assistant Secretary for Health determines that my failure to complete my agreed period of service is due to circumstances which are beyond my control.

(c) It is further agreed that any amount which I am obligated to refund under (a) or (b) of this paragraph will be a debt due to the United States which I hereby agree to pay in full as directed by the Department of Health and Human Services.

Dr. Patricia Keegan, Chief, Oncology Branch, Center for Biologic Evaluation and Research, FDA, scheduled a meeting with the plaintiff for September 29, 1997, at 2:00 p.m., to discuss work issues. At the September 29, 1997, 2:00 p.m. meeting, Dr. Keegan had planned to issue plaintiff a memorandum proposing her removal from the FDA based on "longstanding and repeated misconduct." When the plaintiff failed to report for duty, the memorandum was delivered by mail and Federal Express to the plaintiff's home, and her employment status was classified as AWOL until she appeared for work on assigned tasks, after which she would be placed on administrative leave with pay and required to follow instructions in the memorandum.

Dr. Keegan's memorandum indicated that the agency proposed to remove her from federal service for "(1) Repeated Failure to Follow Supervisory Instructions, (2) Repeated Unauthorized Absences, (3) Unacceptable Conduct, and (4) Misuse of Government Equipment." Over the course of a lengthy memorandum, numerous examples were cited, by specific date, of plaintiff's conduct which the agency indicated led to the proposed removal. Dr. Keegan's memorandum notified plaintiff that "you will continue in a non-duty status with pay (administrative leave) at your present grade and salary during the advance notice period of this action." Dr. Keegan also repeated the instructions that plaintiff must check in by telephone and remain available during her normal work day, with the reminder that, "[i]f you fail to

---

**2.** The record does not contain the September 23, 1997 memorandum. However, the documents in the record submitted by the plaintiff do include an October 1, 1997, memorandum from Dr. Patricia Keegan to the plaintiff, discussed below, which contains descriptions and excerpts from the September 23, 1997 memorandum.

do so and are unavailable when needed or summoned, you will be charged AWOL for the period of unavailability."

Two days later, Dr. Keegan sent a second memorandum to plaintiff, dated October 1, 1997, which explained in detail why her status had been changed to AWOL after she had missed the September 29, 1997, 2:00 p.m. meeting, and again informed plaintiff that, "you will remain on AWOL status until you come in to work on these tasks," referring to the instructions in the earlier memorandum.

On February 5, 1998, Dr. David W. Feigal, Deputy Director, Center for Biologics Evaluation and Research, FDA, sent plaintiff a twenty-two page memorandum reiterating the agency's reasons for deciding to remove plaintiff, including her repeated unauthorized absences, unacceptable conduct, failure to adhere to agency instructions, and misuse of government equipment. In the memorandum, Dr. Feigal confirmed the agency decision to remove plaintiff, effective February 6, 1998. Dr. Feigal's February 5, 1998 memorandum also explained to the plaintiff that she had the right to appeal the termination decision to the Regional Director of the Merit Systems Protection Board (MSPB), or that, for allegations of discrimination, plaintiff could file a complaint with HHS in accordance with the Equal Employment Opportunity Commission (EEOC) regulations.

On February 6, 1998, HHS issued a "Notification of Personnel Action" to remove the plaintiff for "repeated failure to follow supervisory instruction and unauthorized absences and unacceptable conduct and misuses of government equipment." This form also notified plaintiff that "the employee is obligated to pay debt for noncompletion of a PCA contract. The debt is approximately $7,995.00."

Because the plaintiff had not fully satisfied the debt, on June 18, 1999, the Debt Management Branch sent plaintiff a notice stating that "an overpayment that incurred while you were employed with the Department of Health and Human Services is still outstanding.... This debt must be paid within 30 days from the date of this letter...." The "Nature of Debt" was listed as "Physicians Comp. Pay" and the amount indicated was "$2,973.04." The Debt Management Branch also sent plaintiff a separate notice on June 18, 1999, that an overpayment in the amount of $1,116.82 had occurred in plaintiff's Base Pay from December 23, 1995—February 3, 1996, and that she must repay the debt within 30 days, or interest would accrue on the unpaid principal balance. According to a letter from the HHS Chief of the Debt Collection Center dated July 19, 2005 and attached to the complaint, not until more than five years later, on July 13, 2004, was the remaining debt paid by plaintiff in full, $1,595.75 for overpaid base pay plus interest, and $4,976.34 for PCA debt plus interest.

Previously, this plaintiff has filed multiple claims and appeals in other judicial forums based on the events leading to her removal from employment with the FDA. For example, among the reported decisions, in March, 1996, plaintiff filed a complaint (Civil No. AMD 96–873) in the United States District Court for the District of Maryland, alleging sex, race, religious and retaliation discrimination claims under Title VII of the Civil Rights Act of 1964. *Dachman v. Shalala,* 950 F.Supp. 708 (D.Md.1997) (at the time, the court denied plaintiff's motion to amend the complaint to add a *Bivens* action against plaintiff's co-worker who allegedly left the threatening telephone message).[3] The court apparently later allowed the amendment, or a new cause of action was filed, because in *Dachman v. Siegel,* 13 Fed.Appx. 195 (4th Cir.2001), the Fourth Circuit Court of Appeals affirmed District Judge Davis' denial of plaintiff's request for reconsideration in the *Bivens* claim, *Dachman v. Siegal,* No. CA–00–965–AMD (D.Md. Dec. 4, 18, 2000). In a subsequent opinion in the same case, the

---

3. The District Court opinion also noted that: "[p]rior to filing the lawsuit, Dr. Dachman had filed three EEO administrative complaints alleging discrimination and retaliation on February 24, 1995, September 12, 1995, and February 28, 1996." *Dachman v. Shalala,* 46 F.Supp.2d 419, 422 n. 2 (D.Md.1999). Dr. Dachman also tried

to appeal the summary judgment award to the defendant on all but the termination claims to the United States Court of Appeals for the Fourth Circuit, which dismissed because the order appealed was not a final order, nor an appealable interlocutory or collateral order. *See Dachman v. Shalala,* 191 F.3d 447 (4th Cir.1999) (table).

District Court granted the defendant's motion for summary judgment on all of the plaintiff's claims except the termination claims. The court found that:

> Despite the multitude of allegations, as a matter of law, plaintiff has failed to establish a prima facie case of retaliatory harassment because she has not provided a basis, beyond her own subjective beliefs, that she has been targeted by her supervisors for disrespectful, career-thwarting treatment. To the contrary, a reasonable fact finder would be compelled on this record to conclude that Dr. Dachman's supervisors have almost without exception been *reactive* to whatever she has presented to them in the way of daily challenges to get her to come to work, remain at work, perform her duties in a professional manner and, most significant of all, to take supervisory instructions and directions respectfully and seriously.

*Dachman v. Shalala,* 46 F.Supp.2d at 438.

The following year, the court issued a memorandum opinion which granted the defendant's motion for summary judgment on plaintiff's termination claims. *See Dachman v. Shalala,* Civ. No. AMD 96–873, slip op. at 2 (D.Md. Mar. 6, 2000). The court cited Dr. Keegan's "meticulously-detailed 60–page, single-spaced memorandum," also noting that Dr. Feigal's 22–page analysis "considered each and every one of the issues raised in the responses provided by Dr. Dachman and her counsel." *Id.* The court found that: "[i]t is clear beyond question that no reasonable juror could conclude that the termination of Dr. Dachman's employment was motivated by animus based on any prohibited criterion or that her discharge was an act of retaliation.". *Id.* at 3. The Fourth Circuit affirmed. *Dachman v. Shalala,* 9 Fed.Appx. 186, 189

(4th Cir.2001) (noting that the record indicated that appellant was not performing her job satisfactorily, that there was no inference of religious discrimination and that there was documentation of plaintiff's poor attendance and inappropriate leave use), *cert. denied sub nom. Dachman v. Thompson,* 534 U.S. 1022, 122 S.Ct. 551, 151 L.Ed.2d 427 (2001).[4]

Plaintiff filed a complaint in the United States Court of Federal Claims on July 21, 2005, "based on 5 USC § 51 General Schedule of Pay [5] ... [and] on the Physician's Comparability Allowance (PCA) contract 5 USC 5948." In her complaint in this court, plaintiff states that she was improperly placed on AWOL status, is entitled to the benefits commensurate with her administrative leave status, including pay and health insurance, and should not have lost the benefits of her PCA contract or been forced to pay a debt for PCA and back pay received. Plaintiff states that the government is responsible for her early termination, rather than her own misconduct. Plaintiff, therefore, seeks monetary relief for "fraudulently withholding pay from petitioner while on administrative leave ... fraudulent breach of contact [sic]. . . . In addition, Petitioner seeks an award of just compensation for the early termination of the government's payment of employee health insurance when they stopped paying Plaintiff while on administrative leave." Plaintiff requests the following relief: $50,000.00 in pay allegedly wrongfully withheld; up to $4,000 for health insurance premiums incurred by plaintiff during the same time period; $6,500.00 for debts repaid by plaintiff to the defendant resulting from the defendant's breach of plaintiff's PCA contract; as well as interest and the costs of litigation.

---

4. *See also Dachman v. United States,* 31 F.Supp.2d 1003 (D.Md.1998) (dismissing negligent infliction of emotional distress claim that arose out of allegation of malicious prosecution or abuse of process), *aff'd,* 166 F.3d 332 (4th Cir.1998) (table), *cert. denied,* 527 U.S. 1038, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), *reh'g denied,* 527 U.S. 1058, 120 S.Ct. 24, 144 L.Ed.2d 827 (1999); *Dachman v. United States,* 155 F.3d 558 (4th Cir.1998) (affirming the dismissal of plaintiff's complaint by the United States District Court for the District of Maryland, No. 96–1261, for lack of subject matter jurisdiction), *cert. de-*

*nied sub nom. Dachman v. Schwieterman,* 525 U.S. 1123, 119 S.Ct. 906, 142 L.Ed.2d 905 (1999).

5. There is no "5 USC § 51." Plaintiff, however, may be trying to cite to 5 U.S.C. Chapter 51, which is titled "Classification" (of federal employees for pay purposes), and/or 5 U.S.C. Chapter 53, which is titled "Pay Rates and Systems." Subchapter III of 5 U.S.C. Chapter 53 is titled "General Schedule Pay Rates."

Defendant filed a motion to dismiss the complaint on multiple grounds. According to the defendant, plaintiff's claims are governed by the Civil Service Reform Act (CSRA) and, therefore, is outside this court's jurisdiction; plaintiff's claims arise out of the events leading up to her removal in February, 1998, and, therefore, are time-barred by the court's six-year statute of limitations, 28 U.S.C. § 2501 (2000); this court does not possess jurisdiction to adjudicate claims brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.; and the doctrine of res judicata bars her claims because her AWOL status and termination were previously litigated.

## DISCUSSION

As a preliminary matter, the court recognizes that although represented initially in a number of the numerous proceedings she previously initiated, in various forums, in the case currently before this court, the plaintiff is proceeding *pro se*, on her own behalf and without counsel. *Pro se* plaintiffs are to be provided more liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has similarly stated that "the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim because '[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims.'" *Forshey v. Principi,* 284 F.3d 1335, 1357 (Fed.Cir.2002) (quoting *Hughes v. Rowe,* 449 U.S. at 15, 101 S.Ct. 173), *cert. denied,* 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002); *see also Durr v. Nicholson,* 400 F.3d 1375, 1380 (Fed.Cir. 2005) ("[P]ro se pleadings are to be liberally construed.") (citing *Hughes v. Rowe,* 449 U.S. at 9–10, 101 S.Ct. 173; *Forshey v. Principi,* 284 F.3d at 1357). However, "there is no 'duty [on the part] of the trial court ... to create a claim which appellant has not spelled out in his pleading....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original). "'A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation....'" *Scogin v. United States,* 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.,* 20 F.3d 771, 775–76 (7th Cir.1994)) (alterations in original and citations omitted); *see also Merritt v. United States,* 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted).

Despite her *pro se* status, however, plaintiff still must comply with the established standards for subject matter jurisdiction. Moreover, she should not be allowed to relitigate previously adjudicated matters. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte,* and even on appeal. *See Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990)); *see also View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). A plaintiff must establish jurisdiction by a preponderance of the evidence. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Thomas v. United States,* 56 Fed.Cl. 112, 115 (2003); *Martinez v. United*

*States,* 48 Fed.Cl. 851, 857 (2001), *aff'd in part,* 281 F.3d 1376 (Fed.Cir.), *reh'g denied* (2002); *Bowen v. United States,* 49 Fed.Cl. 673, 675 (2001), *aff'd,* 292 F.3d 1383 (Fed.Cir. 2002); *Vanalco, Inc. v. United States,* 48 Fed.Cl. 68, 73 (2000); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed.Cir.1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Brubaker Amusement Co. v. United States,* 304 F.3d 1349, 1355 (Fed.Cir.2002), *cert. denied sub nom. Penn Triple S v. United States,* 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003); *Leider v. United States,* 301 F.3d 1290, 1295 (Fed.Cir.2002), *cert. denied,* 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003); *Conti v. United States,* 291 F.3d 1334, 1338 (Fed.Cir.2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 904, 154 L.Ed.2d 785 (2003); *Consol. Edison Co. v. O'Leary,* 117 F.3d 538, 542 (Fed.Cir.1997), *cert. denied sub nom. Consol. Edison Co. v. Pena,* 522 U.S. 1108, 118 S.Ct. 1036, 140 L.Ed.2d 103 (1998); *see also New Valley Corp. v. United States,* 119 F.3d 1576, 1579 (Fed.Cir.), *reh'g denied, and reh'g en banc declined* (1997); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1169 (Fed.Cir.), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.' "); *RCS Enters., Inc. v. United States,* 46 Fed.Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.), *reh'g denied* (1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint filed by the plaintiff are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. 99; *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d at 1580), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States,* 200 F.3d 1369, 1372 (Fed.Cir.2000); *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d at 1167 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d at 1416; *Ho v. United States,* 49 Fed.Cl. 96, 100 (2001), *aff'd,* 30 Fed.Appx. 964 (Fed. Cir.2002); *Alaska v. United States,* 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but

must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d at 747; *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404–05 (1994).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. *See* 28 U.S.C. § 1491 (2000). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr*, 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1372 (Fed.Cir.2001), *aff'd*, 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed.Cir.2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *New York Life Ins. Co. v. United States*, 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly*, 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied*, 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell*, 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States*, 249 F.3d at 1372 (quoting *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *see also United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948; *Fisher v. United States*, 402 F.3d 1167, 1173–74 (Fed.Cir.2005) (en banc); *Tippett v. United States*, 185 F.3d 1250, 1254 (Fed.Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for dam-

ages against the United States." (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed. Cir.1998), *reh'g denied* (1999))); *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g and reh'g en banc denied* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

### I. Back Pay and Health Insurance Claims

■ In her complaint, the plaintiff tries to assert claims for back pay and health insurance benefits, following her suspension and dismissal from the FDA. She argues that she was inappropriately classified as AWOL and improperly terminated from her employment with the FDA. Plaintiff argues that because she was classified as AWOL on September 29, 1997, she did not receive salary or benefits, aside from days on which she had previously arranged to take paid leave, until her termination on February 6, 1998.

The defendant has filed a motion to dismiss on the ground that this court lacks subject matter jurisdiction to adjudicate plaintiff's claim. The defendant argues that the basis of plaintiff's claim for back pay and health insurance are related to her removal from government service, which is properly classified as an adverse personnel action, and, therefore, governed by the CSRA. As a personnel action, the defendant argues that, under the CSRA, the Merit Systems Protection Board (MSPB), for fact finding purposes, and the United States Court of Appeals for the Federal Circuit, on appeal, have jurisdiction over plaintiff's personnel issues, thus, precluding this court from jurisdiction over Dr. Dachman's claims for back pay and health benefits. Plaintiff responds, however, that her claims for relief should be characterized as a contract claim, because of the PCA Allowance agreement she signed, and not as a personnel case, making her claims cognizable in this court.

In 1978, Congress passed the Civil Service Reform Act (CSRA), Pub.L. No. 95–454, 92 Stat. 1138 (1978) (codified at 5 U.S.C. § 7701), which created the Merit Systems Protection Board (MSPB), and granted the MSPB the exclusive authority to adjudicate certain claims by federal employees arising out of certain adverse personnel actions. 5 U.S.C. §§ 7512–7513 (2000).[6] The CSRA "comprehensively overhauled the civil service system." *United States v. Fausto,* 484 U.S. 439, 443, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (quoting *Lindahl v. OPM,* 470 U.S. 768, 773–73, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985)), *reh'g denied,* 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988). The Federal Circuit observed that: "A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *United States v. Fausto,* 484 U.S. at 444, 108 S.Ct. 668 (quoting S.Rep. No. 95–969, at 3 (1978), 1978 U.S.C.C.A.N. 2723). If the CSRA assigns the MSPB jurisdiction over a claim involving a specific category of employee or subject matter, then the United States Court of Federal Claims has no jurisdiction over a claim brought pursuant to the Back Pay Act, which raises issues respecting those areas, and appellate review is lodged properly in the United States Court of Appeals for the Federal Circuit.

The Supreme Court in *United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830, however, "did not rule that the CSRA provided the only means of judicial review of *any* actions affecting federal employees...." *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991) (emphasis in original); *see also Salinas v. United States,* 323 F.3d 1047, 1048–49 (Fed.Cir.2003); *Read v. United States,* 254 F.3d 1064, 1067 (Fed. Cir.2001); *Sacco v. United States,* 63 Fed.Cl. 424, 428–29 (2004), *aff'd,* 452 F.3d 1305 (Fed. Cir.2006).

The United States Court of Appeals for the Federal Circuit has stated:

**6.** If a wrongful removal claim is joined with an allegation of discrimination, the CSRA grants jurisdiction in a United States District Court. 5 U.S.C. § 7702 (2000). Rather than seek a remedy before the MSPB, plaintiff joined a Title VII religious discrimination claim to her initial termination claim and, as discussed above, sought redress in United States District Court. *See Dachman v. Shalala,* 950 F.Supp. 708, as discussed above.

The CSRA provides employees with procedural protections with respect to three general types of personnel action: Chapter 23 forbids "prohibited personnel practices," such as discrimination, coercion of political activity, nepotism, and reprisal against "whistleblowers," 5 U.S.C. § 2302 (1988); Chapter 43 covers removals and reductions in grade and pay based on unacceptable performance, 5 U.S.C. § 4303 (1988); and Chapter 75 covers "adverse personnel actions"—removal, suspension, furlough, reduction in grade and pay—taken to "promote the efficiency of the service" (i.e., involving employee misconduct). 5 U.S.C. §§ 7503, 7513 (1988). *See Fausto*, 484 U.S. at 445–47, 108 S.Ct. at 672–73.

*Bosco v. United States*, 931 F.2d at 883. Complaints regarding these types of actions, therefore, are within the purview of the MSPB. Certain other cases not properly subject to MSPB review may be brought in this court.

In addition, as discussed above, a plaintiff in this court must be able to rely on a "separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *Tippett v. United States*, 185 F.3d at 1255 (quoting *James v. Caldera*, 159 F.3d at 580); *Doe v. United States*, 100 F.3d at 1579; *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. at 607, 372 F.2d at 1009. For example, in *Worthington v. United States*, the United States Court of Appeals for the Federal Circuit found that the MSPB did not have jurisdiction, but the Court of Federal Claims did. The court identified an independent, money-mandating statute, the Federal Employees Flexible and Compressed Work Schedules Act, 5 U.S.C. §§ 6120–6133 (1994), to support the employee's back pay claim as within the purview of the Tucker Act. *Worthington v. United States*, 168 F.3d 24, 26–27 (Fed.Cir.), *reh'g denied* (1999). The MSPB had no jurisdiction over claims of violation of the Federal Employees Flexible and Compressed Work Schedules Act. *Id.* at 27. In its analysis in *Worthington*, the Federal Circuit discussed the MSPB case of *Spezzaferro v. Federal Aviation Administration*, 24 M.S.P.R. 25

(1984). The Federal Circuit noted that in *Spezzaferro*, unlike in *Worthington*, the MSPB had authority over a removal action, as well as a subsequent back pay award emanating from a removal. *Worthington v. United States*, 168 F.3d at 27. "In other words, the Board has jurisdiction over claims for back pay if it has (or had) jurisdiction over the underlying claim." *Id.*

In the case currently before this court, Dr. Dachman's claims for back pay and health insurance benefits emanate from an underlying removal action. Jurisdiction to contest her removal and the monetary consequences, including back pay and health benefits, therefore, are properly assigned to the MSPB under the CSRA, and not to the Court of Federal Claims. Presenting the underlying issues in this case to multiple forums is inappropriate and, as noted above, contrary to the comprehensive statutory scheme established in the Civil Service Reform Act.

II. Contract Claims derived from her PCA Contract

■ Dr. Dachman also alleges a breach by the defendant of the PCA contract she signed, for which reason she asserts that jurisdiction is appropriate in this court. The plaintiff's employment as a physician with the federal government, through the Food and Drug Administration, however, was by "appointment" rather than "contract." The Federal Circuit has stated "there is a 'well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed.Cir.1995) (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir.1985)), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996); *see also Adams v. United States*, 391 F.3d 1212, 1221 (Fed.Cir.2004) ("Like all federal employees, Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract."), *cert. denied*, — U.S. ——, 126 S.Ct. 330, 163 L.Ed.2d 43

**518**

(2005); *Collier v. United States,* 379 F.3d 1330, 1332 (Fed.Cir.2004) ("As an appointed employee, Mr. Collier did not have an employment contract with the government, and did not acquire such a contract through his job description or performance plan."); *Kania v. United States,* 227 Ct.Cl. 458, 464–64, 650 F.2d 264, 268 (1981) ("Thus it has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are made."), *cert. denied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Calvin v. United States,* 63 Fed.Cl. 468, 472 (2005) ("In other words, there is a 'presumption that federal employees hold their positions pursuant to appointment[ ] rather than by contract.'" (quoting *Collier v. United States,* 56 Fed.Cl. 354, 357 (2003))) (alteration in original); *Berry v. United States,* 27 Fed.Cl. 96, 100 (1992) ("The contract liability enforceable under the Tucker Act does not extend to every agreement, understanding, or compact entered into by the Government. It is well established that the rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status.") (citations omitted); *Darden v. United States,* 18 Cl.Ct. 855, 859 (1989) (finding that the most that can be said about plaintiff's job description as a personnel clerk "is that plaintiff was apprised of her forthcoming responsibilities and the salary to which she was entitled for the performance of those duties. It may very well have created certain procedural rights, but under no circumstance may it be viewed as giving rise to a contractual relationship sufficient to create jurisdiction under the Tucker Act."); *Orona v. United States,* 4 Cl.Ct. 81, 82 (1983) ("[P]laintiff's employment ... was through appointment and not by contract, and therefore this court has no jurisdiction under the Tucker Act to consider his claim."). Therefore, if plaintiff's claim is based on a breach of contract theory and the "employment was by 'appointment,' a breach of contract action against the government would be precluded." *Hamlet v. United States,* 63 F.3d at 1101 (citations omitted).

■ The existence of a PCA agreement, signed by the plaintiff, which allowed plaintiff to receive a salary differential from standard civil service pay levels, does not change the characterization of the underlying nature of plaintiff's employment by appointment as a physician with the FDA to one based on a contractual relationship. Although the plaintiff argues that any possible obligation to repay a PCA allotment was contractual in nature and not accompanied by a personnel action, the court finds that the appropriateness of plaintiff's termination from an appointment at the FDA remains the underlying issue in plaintiff's claim in this court for her obligation to reimburse PCA derived monies. The PCA agreement specifically required repayment if the plaintiff failed to complete, either voluntarily or due to misconduct, the years specified in the PCA contract. In plaintiff's case, her termination from the FDA was based on her misconduct, and this court rejects plaintiff's attempt to separate her termination from her PCA repayment obligation. As this court has no jurisdiction to entertain actions seeking monetary remedies stemming from her adverse personnel action, plaintiff's claims for PCA reimbursement also must be dismissed.

### III. Tort Claims

■ Plaintiff also seeks an "award of just compensation for the government's actions in fraudulently withholding pay from petitioner while on administrative leave" and "an additional award of just compensation based on the Government's fraudulent breach of contact [sic] which denied her pay...." Plaintiff's action for damages stemming from allegedly fraudulent, negligent or wrongful actions by government employees are outside this court's jurisdiction because the plaintiff's claims, although in some instances styled by her as "fraudulent breach of contract" claims, sound in tort.

It is well and long established that the Court of Federal Claims lacks jurisdiction over cases sounding in tort. The modern Tucker Act limits the Court of Federal Claims' jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with

the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(2). Courts which have inquired into the scope of the Tucker Act's jurisdictional grant have concluded that section 1491 does not grant jurisdiction over tort claims to the Court of Federal Claims. *See New Am. Shipbuilders v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989) ("If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act...."); *Tree Farm Dev. Corp. v. United States*, 218 Ct.Cl. 308, 316, 585 F.2d 493, 498 (1978) (noting that the Court of Claims "specifically lacks jurisdiction in cases sounding in tort" under the Tucker Act); *Whyte v. United States*, 59 Fed.Cl. 493, 497 (2004) (stating that the Tucker Act does not grant the court jurisdiction over independent tort claims); *Cottrell v. United States*, 42 Fed.Cl. 144, 148 (1998) ("The Tucker Act limits the court's jurisdiction to non-tort money suits against the United States ...."); *see also Keene Corp. v. United States*, 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) ("[T]ort actions brought in other courts were beyond the jurisdiction of the Court of Claims, just as tort cases are outside the jurisdiction of the Court of Federal Claims today."); *Brown v. United States*, 105 F.3d 621, 623 (Fed.Cir. 1997) ("The Court of Federal Claims ... lacks jurisdiction over tort actions against the United States."); *LeBlanc v. United States*, 50 F.3d 1025, 1030 (Fed.Cir.1995) (noting that claims against the government for illegal interference with a lawsuit are "tort claims, over which the Court of Federal Claims has no jurisdiction"); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed.Cir. 1993) ("It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims."). The United States Supreme Court recognized as early as 1868 that Congress did not intend to confer on the Court of Claims jurisdiction over tort actions against the government: "The language of the statutes which confer jurisdiction upon the Court of Claims, excludes by the strongest implication demands against the government founded on torts." *Gibbons v. United States*, 75 U.S. (8 Wall.) 269, 275, 19 L.Ed. 453 (1868). Finally, "[j]urisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act." *McCauley v. United States*, 38 Fed.Cl. 250, 264 (1997), *aff'd*, 152 F.3d 948 (Fed.Cir. 1998) (table), *cert. denied*, 525 U.S. 1032, 119 S.Ct. 574, 142 L.Ed.2d 478 (1998), *reh'g denied*, 525 U.S. 1173, 119 S.Ct. 1102, 143 L.Ed.2d 101 (1999); *see also* 28 U.S.C. § 1346(b) (2000); *Wood v. United States*, 961 F.2d 195, 197 (Fed.Cir.) ("[D]istrict courts have ... exclusive jurisdiction over tort claims for any amount if they fall within the Federal Tort Claims Act, [28 U.S.C.] § 1346(b)."), *reh'g denied*, (Fed.Cir.1992); *Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992) ("The district courts have exclusive jurisdiction in [Federal Tort Claims Act] actions."), *aff'd*, 11 F.3d 1069 (Fed.Cir.1993) (table). Because this court does not have jurisdiction over tort claims, plaintiff's claims alleging government employee misconduct, including fraudulent breach of contract, fraudulent termination and fraudulent withholding of back-pay and health benefits must be dismissed.

## IV. Statute of Limitations

▪ The defendant alternatively bases its motion to dismiss on the grounds that plaintiff's claims are barred by the statute of limitations. The defendant contends that plaintiff's claims arise out of events which ended on February 6, 1998, when plaintiff was terminated from employment with the FDA and that, therefore, the plaintiff's complaint, filed in this court on July 21, 2005, is barred by the applicable six-year statute of limitations. The plaintiff, however, responds that the final event in the present case occurred on July 13, 2004, when she finally repaid the $6,572.09 owed to the government based on overpayment of base pay and the PCA contract reimbursement, and that, therefore, her complaint is not time barred.

The six-year statute of limitations at 28 U.S.C. § 2501 (2000) sets an express limitation on the jurisdiction granted to this court under the Tucker Act. *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed.Cir.2003) *(en banc), cert. denied*, 540 U.S. 1177, 124

S.Ct. 1404, 158 L.Ed.2d 76 (2004); *Franconia Assocs. v. United States*, 240 F.3d 1358, 1362 (Fed.Cir.2001), *rev'd on other grounds*, 536 U.S. 129, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002); *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed.Cir.1998); *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1454 (Fed.Cir. 1997); *Hart v. United States*, 910 F.2d 815, 817 (Fed.Cir.1990) (citing *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)); *Holloway v. United States*, 60 Fed.Cl. 254, 256 (2004), *aff'd*, 143 Fed.Appx. 313 (Fed.Cir.), *cert. denied*, —— U.S. ——, 126 S.Ct. 389, 163 L.Ed.2d 173 (2005). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304, 1310 (Fed. Cir.2000), *cert. denied*, 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); *see also Martinez v. United States*, 333 F.3d at 1316; *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Frazer v. United States*, 288 F.3d 1347, 1351 (Fed.Cir. 2002); *Brown Park Estates–Fairfield Dev. Co. v. United States*, 127 F.3d at 1454; *Holloway v. United States*, 60 Fed.Cl. at 256. Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed, and may not be waived by the court. *Alder Terrace, Inc. v. United States*, 161 F.3d at 1376–77; *Holloway v. United States*, 60 Fed.Cl. at 256; *Martinez v. United States*, 48 Fed.Cl. at 857; *Entines v. United States*, 39 Fed.Cl. 673, 678 (1997), *aff'd*, 185 F.3d 881 (Fed.Cir.) (table), *cert. denied*, 526 U.S. 1117, 119 S.Ct. 1766, 143 L.Ed.2d 796 (1999); *McDonald v. United States*, 37 Fed.Cl. 110, 113 (1997), *aff'd*, 135 F.3d 778 (Fed.Cir.1998) (table).

The statute of limitations for a claim against the United States begins to run "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment....'" *Martinez v. United States*, 333 F.3d at 1303 (quoting *Nager Elec. Co. v. United States*, 177 Ct.Cl. 234, 240, 368 F.2d 847, 851 (1966), *reh'g denied*, 184 Ct.Cl. 390, 396 F.2d 977 (1968));

*Franconia Assocs. v. United States*, 240 F.3d at 1362; *Alder Terrace, Inc. v. United States*, 161 F.3d at 1377; *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988); *Lins v. United States*, 231 Ct.Cl. 579, 582, 688 F.2d 784, 786 (1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 995 (1983); *Oceanic Steamship Co. v. United States*, 165 Ct.Cl. 217, 225, 1964 WL 8621 (1964); *Holloway v. United States*, 60 Fed.Cl. at 256.

Plaintiff attempts to rely on the case of *Roberta B. v. United States*, 61 Fed.Cl. 631 (2004), to support her argument that the final event in the present case was her completed repayment, on July 13, 2004, of the $6,572.09 in PCA allowance and overpayment, plus interest. The plaintiff in *Roberta B.*, employed by the Central Intelligence Agency (CIA) at the time, was assigned to a diplomatic compound in eastern Asia. Prior to her departure, plaintiff signed a twelve-month tour of duty contract with the CIA which stipulated that, in the event of a breach, plaintiff must reimburse the CIA its overseas travel expenses connected with her placement. The plaintiff complained that her housing was unsatisfactory and, after failing to secure alternative living arrangements, returned to the United States short of her twelve-month tour of duty. In 2002, approximately seven years after the plaintiff breached her tour of duty contract, the CIA took an offset from the plaintiff's salary as reimbursement of its expenses. *Id.* at 633. The Court of Federal Claims took jurisdiction over the dispute after the CIA offset the plaintiff's salary, because the claim was "one for money presently owing, that is, money that is claimed to be due from the government under the terms of a particular statute or regulation or money alleged to have been improperly collected from the claimant by the government," and prior to the offset, the plaintiff did not have a claim for money owing. *Id.* at 634–35. The statute of limitations in *Roberta B.* was established as starting to run on the date of the offset, 2002, not when she returned home and breached her contract in 1997. *Id.* at 633, 635. Because, in the case of *Roberta B.*, the offset occurred in 2002, the plaintiff's claim, which was filed in 2003, was found to be

within the applicable statute of limitations. *Id.* at 635.

The *Roberta B.* case, however, is distinguishable from the present case. In *Roberta B.*, there was no underlying adverse personnel action, such as removal from government service, which was decisive on claims entitlement. In *Roberta B.*, there was only the claim to be reimbursed for travel and relocation expenses which had been withheld from pay. *Id.* In contrast, the statute of limitations in the case currently before this court began to run on the date of the plaintiff's removal from government service, on February 6, 1998, because Dr. Dachman's removal was the final event that terminated plaintiff's entitlement to pay and benefits and triggered the repayment obligation in the PCA Agreement. Moreover, the propriety of Dr. Dachman's termination from government service was decisive on her claims entitlement. Dr. Dachman's status was changed by her AWOL status and termination. Plaintiff's entitlement to a PCA allotment or obligation to repay was contingent upon her completion of two years with the FDA, or a showing that she had been wrongfully terminated prior to the fulfillment of the time commitment.

Although the plaintiff continues to argue that her termination was improper, and that her termination did not establish her obligation to repay her PCA allotment, the PCA agreement, which plaintiff signed, states clearly that, "in the event [plaintiff] voluntarily or because of misconduct fail[s] to complete the second year of a two-year agreement ... [plaintiff] will refund the amount of allowance [she] received under this agreement...." Nor does plaintiff argue that she fulfilled the requisite two-year service period. The FDA's February 6, 1998 termination notice also delineated the implications of the termination on plaintiff's pay, benefits, and PCA allowance. Moreover, the propriety of Dr. Dachman's termination from FDA service and entitlement to pay and benefits has been adjudicated previously. On the date that Dr. Dachman was terminated, February 6, 1998, she knew or should have known she was no longer entitled to pay and benefits as an FDA employee and that she would be obligated to repay the PCA differential.

Consequently, her action filed in this court on July 21, 2005 is barred by the applicable statute of limitations.

Plaintiff also argues, in the alternative, that the statute of limitations should begin to run on July 22, 1999, when, she alleges, the defendant "admitted that it had destroyed her time and attendance records before issuing her proposal to remove based on such data." Plaintiff states that prior to this admission she "was not aware that the government had destroyed records and rewrote them[,] invalidating her termination until July 22, 1999...." The plaintiff apparently is arguing for an equitable tolling of the statute of limitations.

Equitable tolling of the statute of limitations is permitted in proper circumstances, even against the federal government. *See Hopland Band of Pomo Indians v. United States,* 855 F.2d at 1577–78; *Welcker v. United States,* 752 F.2d 1577, 1580 (Fed.Cir.1985) (" 'Once plaintiff is on inquiry that it has a potential claim, the statute can start to run.' ") (quoting *Japanese War Notes Claimants Ass'n v. United States,* 178 Ct.Cl. 630, 373 F.2d 356, 359 (1967)), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *see also Barrett v. United States,* 689 F.2d 324, 329–30 (2d Cir.1982), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983). Equitable tolling against the federal government, however, is "sparingly" applied. *Martinez v. United States,* 333 F.3d at 1317 (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), *reh'g denied,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991)).

The record in this case does not establish either that the defendant destroyed plaintiff's attendance records or that the time and attendance records defendant used in plaintiff's case were inaccurate. The court finds that this argument offered by the plaintiff is without merit. The final events entitling plaintiff to file a claim in this court or any federal court occurred on February 6, 1998, when plaintiff was removed from her position. Plaintiff's claims are barred by the applicable six-year statute of limitations.

### V. Res Judicata

The defendant also raises the doctrine of res judicata as barring plaintiff's claims related to her removal from federal service. The United States Supreme Court summarized the doctrines of res judicata (claim preclusion) and collateral estoppel (issue preclusion) as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); *id.*, § 48(bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted).

The Supreme Court has established that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981); *see also In re Deckler*, 977 F.2d 1449, 1452 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (1992); *Mark Smith Constr. Co. v. United States*, 15 Cl.Ct. 32, 35–36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrine conserves judicial resources, fosters reliance upon judicial decisions, and protects litigants from vexatious and needless litigation. *Id.* at 36; *Martin v. United States*, 30 Fed.Cl. 542, 546, *aff'd*, 41 F.3d 1519 (Fed.Cir.1994) (table); *Lins v. United States*, 4 Cl.Ct. 772, 777, *aff'd*, 758 F.2d 666 (Fed.Cir.1984) (table).

The United States Court of Appeals for the Federal Circuit, following the precedent set by the Supreme Court, also discussed issue preclusion and claim preclusion writing that "unlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit." *Carson v. Dep't of Energy*, 398 F.3d 1369, 1375, n. 8 (Fed.Cir.), *reh'g denied* (2005). The Federal Circuit, in further discussing the doctrine of *res judicata*, or claim preclusion, specified that "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Id.* at 1375; *see also Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed.Cir.2000), *reh'g and reh'g en banc denied* (2000); *Int'l Nutrition Co. v. Horphag*

*Research, Ltd.,* 220 F.3d 1325, 1328 (Fed.Cir. 2000) (defining the third element as involving "the same claims that were raised, or could have been raised, in the prior action"); *Amgen, Inc. v. Genetics Inst., Inc.,* 98 F.3d 1328, 1331 (Fed.Cir.1996), *reh'g denied, en banc suggestion declined* (1997); *Schickler v. United States,* 54 Fed.Cl. 264, 270 (2002) (citing *Blonder–Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)), *appeal dismissed,* 70 Fed.Appx. 584 (Fed.Cir.2003). Further clarifying the third requirement in terms of claim preclusion, the Federal Circuit wrote:

> A subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [*Restatement (Second) of Judgments* § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See [Barr v. Resolution Trust Corp.,* 837 S.W.2d 627,] *id.* at 630 [(1992)]; *see also Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 777 (5th Cir. 1984), *reh'g denied,* 747 F.2d 1465 (1981[1984]) (table).

*United Tech. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1344 (Fed.Cir.), *reh'g denied* (1999).

Dr. Dachman previously has pursued multiple claims in federal courts and administrative forums based on the same events leading up to and resulting in her termination from the FDA. As discussed above, in 1996, plaintiff filed complaints in the United States District Court for the District of Maryland, alleging sex, race, religious and retaliation discrimination claims under Title VII of the Civil Rights Act of 1964, as well as a *Bivens* claim. In each instance, the United States District Court of Maryland found against the plaintiff and granted the defendant's motions for summary judgment on plaintiff's claims arising out of her termination of employment. *See, e.g., Dachman v. Shalala,* Civ. No. AMD 96–873, slip op. at 2 (citing to Dr. Keegan's "meticulously-detailed 60–page, single-spaced memorandum," and Dr. Feigal's 22–page analysis, and finding that: "[I]t is clear be-

yond question that no reasonable juror could conclude that the termination of Dr. Dachman's employment was motivated by animus based on any prohibited criterion or that her discharge was an act of retaliation."). The Court of Appeals for the Fourth Circuit also concluded that the District Court of Maryland did not abuse its discretion when it denied additional discovery because "[plaintiff] could not produce any evidence to refute her supervisor's detailed explanation for her termination." *Dachman v. Shalala,* 9 Fed. Appx. at 192. Even though some of the plaintiff's previous complaints in District Court and appeals to the Circuit Court were styled as against individuals in the Department of Health and Human Services (HHS), and plaintiff's current complaint names the United States as the defendant, plaintiff's claims before this court are based on the same cause of action, her suspension and termination from the FDA, an agency of HHS. The plaintiff is attempting to re-litigate the circumstances of her suspension and termination in this court, including the attendant consequences of the termination on plaintiff's PCA, and back pay obligations. This plaintiff already has availed herself of multiple opportunities in various courts on the same issues she seeks to bring to this court. Plaintiff, therefore, would be barred from re-litigating her claims here, even if she were able to satisfy the other jurisdictional and statute of limitations requirements, which she is not. Although plaintiff may feel she has been wronged, the court system has previously allowed ample objective and fair opportunities to review the evidence presented and further litigation is not likely to result in a different conclusion.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is, hereby, **GRANTED**, and plaintiff's complaint is **DISMISSED**, with prejudice. The clerk's office is directed to enter **JUDGMENT** for the defendant in accordance with this decision.

**IT IS SO ORDERED.**