139 F.3d 679
 76 Fair Empl.Prac.Cas. (BNA) 561,
72 Empl. Prac. Dec. P 45,203,
98 Cal. Daily Op. Serv. 1916,
98 Daily Journal D.A.R. 2699
Mary TIANO, a married woman, Plaintiff-Appellee-Cross Appellant,
v.
DILLARD DEPARTMENT STORES, INC., a Delaware corporation,
Defendant-Appellant-Cross Appellee.
 Nos. 96-16723, 96-16955.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 8, 1997.
Decided March 18, 1998.
 
 Charles L. Chester, Ryley, Carlock & Applewhite, Phoenix, AZ, for defendant-appellant-cross appellee.
 Bradley H. Schleier, Schleier Law Offices, Phoenix, AZ, for plaintiff-appellee-cross appellant.
 Appeals from the United States District Court for the District of Arizona; Roger G. Strand, District Judge, Presiding. D.C. No. CV-93-01240-RGS.
 Before: FLETCHER, WIGGINS, and RYMER, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 
 1
 Mary Tiano sued her employer Dillard Department Stores ("Dillard's") for unlawful termination in violation of Title VII, 42 U.S.C. §§ 2000e et seq., for failure to make reasonable accommodation of her religious beliefs. Dillard's terminated Tiano, a Dillard's salesperson, after she departed on a ten-day "pilgrimage" to Medjugorje, Yugoslavia.
 
 
 2
 The district court found in favor of Tiano, holding that (1) Tiano established a prima facie case of religious discrimination, (2) Dillard's failed to demonstrate that it had made a reasonable effort to accommodate Tiano's religious beliefs, and (3) such reasonable accommodation would not have resulted in undue hardship to Dillard's. The court awarded Tiano $16,445.65 in lost wages. Dillard's appealed the finding of religious discrimination, and Tiano cross-appealed the damage award. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse the finding of religious discrimination under Title VII.
 
 BACKGROUND
 
 3
 Plaintiff-Appellee Mary Tiano was employed at Dillard's in the Park Central Mall in Phoenix, Arizona, in 1988. She worked in the women's shoe department as a salesperson. Dillard's considered her a productive employee, a "pacesetter," because her sales exceeded $200,000 per year. Tiano is a devout Roman Catholic who regularly attends church. She testified in court that her religion plays a significant role in her life.
 
 
 4
 In 1988, Dillard's had an authorized absence policy of granting unpaid leave at management's discretion. It also had a vacation policy which prohibited employees from taking leave between October and December, the store's busy holiday season.
 
 
 5
 In late August of 1988, Tiano learned of a pilgrimage to Medjugorje, Yugoslavia taking place between October 17 and October 26. Several people have claimed that visions of the Virgin Mary appeared to them in Medjugorje, although the Catholic Church has not designated Medjugorje an official pilgrimage site of the Church. Tiano testified that on August 22, 1988, she had a "calling from God" to attend this pilgrimage. The only evidence she offered at trial suggesting that her calling mandated her attendance on the specific dates listed above was the following testimony: "I felt I was called to go.... I felt that from deep in my heart that I was called. I had to be there at that time. I had to go." When asked if she could have gone at another time, Tiano responded, "No."
 
 
 6
 Tiano spoke with her immediate supervisor at Dillard's, Roxy McGraw, and requested unpaid leave to go on the October pilgrimage. McGraw denied the request. Next, Tiano spoke with Steve Foster, the Operations Manager, and, according to her testimony, explained that she was taking the trip for religious reasons. Foster denied her request because of the no-leave policy for October and the impending October anniversary sale. When the dates of the sale changed, Foster again denied her request.
 
 
 7
 Tiano then met with Gary Borofsky, the Store Manager. Tiano testified that at this meeting she described the religious nature of the pilgrimage and the purported visions in Medjugorje. Borofsky testified at trial that he knew very little about the nature of her trip. He denied her request primarily because of the no-leave policy. Tiano then asked him if she could transfer to another store. Borofsky supplied her with the paperwork and, according to Tiano, stated that she would have to contact the stores herself. He informed her that she would not have a job at the Park Central Mall store when she returned from her pilgrimage. Tiano completed the transfer papers on October 14 and soon thereafter left on the pilgrimage.
 
 
 8
 In Tiano's absence, her immediate supervisor, McGraw, spent significant time on the sales floor. Several of Dillard's supervisors testified at trial that it was impracticable to hire a new employee to fill in for Tiano because of the required training time. In addition, they testified that current employees could not work more than they were already scheduled to work.
 
 
 9
 When Tiano returned from her trip on October 28, she went to Dillard's to inquire about her job. Foster informed her that she had voluntarily resigned her position. For the rest of 1988 and through 1989, Tiano searched diligently for a new job. In January of 1990, Tiano entered the field of floral design where she remained until the time of trial. By October of 1992, Tiano's salary was as much as or more than her salary had been at Dillard's.
 
 
 10
 After the Equal Employment Opportunity Commission issued a determination that Tiano had been a victim of religious discrimination, Tiano sued Dillard's in district court. She alleged that Dillard's had violated Title VII when it terminated her because of her pilgrimage. Dillard's claimed that Tiano did not have a sincerely-held religious belief, that it attempted to accommodate any belief she did have, and that accommodation would cause undue hardship. The district court found for Tiano and awarded her damages of $16,445.65. This award reflected lost wages incurred in 1988 and 1989 less any salary or unemployment benefits received. The court found that Tiano failed to mitigate her damages after January of 1990 because she accepted employment in a different field, floral design. These appeals followed.
 
 STANDARD OF REVIEW
 
 11
 We review de novo whether a plaintiff has satisfied the elements of a prima facie case of religious discrimination, but review the underlying facts for clear error. See Heller v. EBB Auto Co., 8 F.3d 1433, 1438 (9th Cir.1993).
 
 DISCUSSION
 
 12
 Title VII makes it an unlawful employment practice for an employer "to discharge any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." § 2000e(j).
 
 
 13
 This court has established a two-part framework to analyze Title VII religious discrimination claims. See Heller, 8 F.3d at 1438. First, the employee must establish a prima facie case by proving that (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements. See id. Second, if the employee proves a prima facie case of discrimination, the burden shifts to the employer to show either that it initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship. See id.; E.E.O.C. v. Hacienda Hotel, 881 F.2d 1504, 1512 (9th Cir.1989).
 
 
 14
 The district court found that Tiano established a prima facie case of religious discrimination and that Dillard's failed to show either that it made a good faith effort to accommodate her belief or that undue hardship would result. Because we find that the district court erred in determining that Tiano established a prima facie case, we need not discuss reasonable accommodation or undue hardship.
 
 
 15
 The district court concluded that Tiano's bona fide religious belief included a temporal mandate. Thus, the court interpreted her religious belief to be a need to go on a pilgrimage to Medjugorje between October 17 and 26, rather than a need to go to Medjugorje generally at some point in time. After a review of the entire record, we are "left with the definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)) (internal quotations omitted). The evidence shows only a bona fide religious belief that she needed to go to Medjugorje at some time; she failed to prove the temporal mandate. The district court's determination to the contrary was clearly erroneous.
 
 
 16
 We recognize that, in general, employees do not have "[a]n inflexible duty to reschedule" their religious ceremonies. Heller, 8 F.3d at 1439. In a case such as this, however, where an employee maintains that her religious beliefs require her to attend a particular pilgrimage, she must prove that the temporal mandate was part of the bona fide religious belief. Otherwise, the employer is forced to accommodate the personal preferences of the employee--the timing of the trip. Title VII does not protect secular preferences. See, e.g., Brown v. General Motors Corp., 601 F.2d 956, 960 (8th Cir.1979); Vetter v. Farmland Indus., Inc., 884 F.Supp. 1287, 1307 (N.D.Iowa 1995).
 
 
 17
 The only evidence offered by Tiano to prove that the temporal mandate was part of her calling was her testimony. She directly addressed the question only once: "I felt I was called to go.... I felt that from deep in my heart that I was called. I had to be there at that time. I had to go." (emphasis added). She offered no corroborating evidence to support the claim that she had to attend the pilgrimage between October 17 and 26. For example, she did not testify that the visions of the Virgin Mary were expected to be more intense during that period. Nor did she suggest that the Catholic Church advocated her attendance at that particular pilgrimage. In short, her lone unilateral statement that she "had to be there at that time" was her only evidence.
 
 
 18
 The remainder of the record is replete with evidence that contradicts Tiano's claim that the temporal mandate was part of her bona fide religious belief. First, there is evidence that Tiano went to the E.E.O.C. to complain of religious discrimination only after she learned that her ticket for the pilgrimage was not refundable. The E.E.O.C.'s intake officer noted, prior to Tiano's departure on the pilgrimage, that "[t]he travel cost [Tiano] $1400, which she paid and cannot get her money back, besides the fact that it means much to her and her religion, Catholic." Thus, Tiano knew her ticket was not refundable before she went on the pilgrimage, and this fact was of enough concern to her that she alerted the intake officer to it.
 
 
 19
 Second, the testimony of Tiano's friend and pilgrimage companion, Margaret Long, strongly suggests that the timing of the trip was a personal preference. Long testified that Tiano approached her with information about the pilgrimage contained in a church bulletin. Long stated that Tiano "wanted to get some more information to find out about the trip." Long then testified that they decided to go on this particular pilgrimage "[a]fter [they] talked about it and more or less thought that it would be interesting to go on." Finally, Long indicated that Tiano never supplied a specific reason for her desire to go on this particular pilgrimage: "No, not a definite reason. I don't recall a definite reason, just we both had a strong desire to go." Thus, Long's testimony suggests that the timing of the trip was a personal preference, not part of a bona fide religious belief. Both women "talked about it" and "thought that it would be interesting to go on"--hardly a religious calling.
 
 
 20
 The district court did not indicate upon which evidence it based the finding that the temporal mandate was part of Tiano's bona fide religious belief. This oversight is understandable when one examines the record. There is no evidence upon which one could rely except for Tiano's lone statement that she "had to be there at that time." That statement is insufficient to prove that the temporal mandate was part of her religious belief. In fact, the record supports the opposite conclusion--the timing of the trip was a personal preference and not part of her calling. The district court clearly erred when it found that Tiano's bona fide religious belief included a temporal mandate.
 
 
 21
 Tiano's bona fide religious belief was limited to a need to go on a pilgrimage to Medjugorje. With this restriction, Tiano is unable to establish a prima facie case of religious discrimination. The record shows that several group tours to Medjugorje were available. Furthermore, Tiano had vacation time available in 1989 and Dillard's frequently authorized unpaid leaves at times other than the holiday season. As a result, Tiano's need to attend a pilgrimage to Medjugorje was not in conflict with her employment duties. Thus, she could not satisfy one crucial element of her prima facie case: conflict between her religious belief and employment duties. See Heller, 8 F.3d at 1438 (requiring "a bona fide religious belief, the practice of which conflicted with an employment duty"). In the absence of a prima facie case, Dillard's cannot be liable for religious discrimination under Title VII. See, e.g., id.; U.S. E.E.O.C. v. J.P. Stevens and Co., Inc., 740 F.Supp. 1135, 1136 (M.D.N.C.1990) (stating that a plaintiff cannot prevail having failed to establish a prima facie case of religious discrimination). Accordingly, the district court's finding of Title VII liability must be reversed.
 
 CONCLUSION
 
 22
 The district court's finding that Tiano's bona fide religious belief included a temporal mandate was clearly erroneous. Tiano failed to establish a prima facie case of religious discrimination. Thus, the district court's finding of Title VII liability must be reversed. Because there is no liability, we dismiss Tiano's cross-appeal of the damage award.
 
 
 23
 REVERSED.
 
 FLETCHER, Circuit Judge, Dissenting:
 
 24
 I respectfully dissent.
 
 
 25
 The district court believed Tiano's testimony when she stated: "I felt that from deep in my heart that I was called. I had to be there at that time. I had to go." The district court grounded its holding that Tiano's religious belief required her to take her pilgrimage to Medjugorje during those particular days in October on this testimony. We should not disturb its credibility finding.
 
 
 26
 We have long held that questions of credibility "are generally immune from appellate review." United States v. Hodges, 770 F.2d 1475, 1478 (9th Cir.1985); accord United States v. McClelland, 72 F.3d 717, 724 (9th Cir.1995). Credibility determinations made by judges, no less than juries, sitting as triers of fact should be respected. See United States v. Mayberry, 913 F.2d 719, 721 (9th Cir.1990); United States v. Castillo, 866 F.2d 1071, 1078 (9th Cir.1989). This is so because the trier of fact is uniquely positioned to observe the demeanor of a live witness on the stand. The cold record available for appellate review is a poor substitute, especially for something as personal as a religious belief.
 
 
 27
 Nothing in the record suggests that Tiano's belief that she had to make her pilgrimage "at that time" was in any way insincere. Moreover, October is known to be a particularly important month for pilgrimages to Medjugorje. See, e.g., Mark Belko, Religious Man 'Adopts' a Family in Bosnia, Pittsburgh Post-Gazette, Jan. 5, 1995, at C1 (recounting October 1993 pilgrimage to Medjugorje); Biddeford Woman to Lead Pilgrimage to Medjugorje, Portland Press Herald, June 21, 1997, at 2C (describing October pilgrimage to Medjugorje); William Presecky, A Christmas Quest Cemetery Cross Bears Hope, Faith, Chi. Trib., Dec. 25, 1992, at 1 (recounting October 1990 pilgrimage to Medjugorje); Theories Vary on Recent Wave of Mary Sightings, L.A. Times, Oct. 22, 1994, at 4 (linking numerous sightings to October 1917, when the Virgin Mary made an appearance in Fatima, Portugal).
 
 
 28
 I would affirm.