**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

S. REBECCA DACHMAN,
　　　　　　*Plaintiff-Appellant,*

v.

DONNA E. SHALALA, SECRETARY,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
　　　　　　*Defendant-Appellee,*

and

KAREN D. WEISS,
　　　　　　*Party in Interest.*

MARGARET MITRANE, M.D.,
　　　　　　*Movant.*

No. 00-1641

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-96-873-AMD)

Argued: April 6, 2001

Decided: May 18, 2001

Before WIDENER and WILKINS, Circuit Judges, and
Patrick Michael DUFFY, United States District Judge
for the District of South Carolina, sitting by designation.

---

Affirmed by unpublished opinion. Judge Duffy wrote the opinion, in
which Judge Widener and Judge Wilkins joined.

---

## COUNSEL

**ARGUED:** Richard Lee Swick, SWICK & SHAPIRO, P.C., Washington, D.C., for Appellant. Jennifer Lilore Huesman, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

DUFFY, District Judge:

This case is before the court on appellant's claim that the district court erred in granting appellee's motion for summary judgment. Because we conclude that appellant failed to establish any Title VII violation, we affirm.

### I.

Appellant Dr. Rebecca Dachman is an Orthodox Jew. Beginning in 1988 appellant worked as a physician with the Center for Biologics Evaluation and Research ("CBER"), a department of the United States Food and Drug Administration ("FDA"). At issue in this case are adverse employment actions taken against appellant by her supervisors beginning in January 1995.[1]

---

[1]The allegedly discriminatory acts occurring prior to January 1995 are time barred because appellant failed to exhaust her administrative remedies as required by law. *See* 29 C.F.R. § 1614.105(a)(1) (2000). Further, these acts are not part of a continuing violation because, as will be shown, appellant has not established even one claim of discrimination and/or retaliation that was timely filed. *See Woodard v. Lehman*, 717 F.2d 909, 915 (4th Cir. 1983).

Although appellant claimed that she was an exemplary employee, appellant was suspended on January 21, 1995, for fourteen days without pay. Appellant's supervisor stated that she was suspended because of insubordinate, disrespectful, and disruptive behavior. After her suspension, appellant was detailed for a period of ninety days to the Division of Biostatistics and Epidemiology, where appellant claimed that she was given only administrative work. At the end of her ninety day detail, appellant was permanently reassigned to the Oncology Department. Appellant claimed that after her reassignment she was given only Phase I work as opposed to the more difficult Phase II work that she had been entrusted with prior to her administrative leave.

Appellant was suspended again from October 25, 1995, to November 7, 1995. Her supervisor stated that the suspension was a result of appellant's unacceptable behavior at a meeting and her failure to follow supervisory instructions.

Effective November 17, 1995, appellant was put on leave restriction due to her poor attendance and irregular leave use. On September 29, 1997, appellant was placed on administrative leave without pay, and on February 8, 1998, she was terminated. Appellant argued that these adverse employment actions were either (1) discriminatory on the basis of her religion or (2) in retaliation for her filing of a discrimination claim with the Equal Employment Office.

## II.

To establish a prima facie case of discrimination,[2] appellant must (1) show that she was part of a protected group, (2) show that she was performing her job satisfactorily, and (3) provide "'indirect evidence whose cumulative probative force supports a reasonable inference that [the] [adverse employment action] was discriminatory.'" *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996) (quoting *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-06 (4th Cir. 1992)) (first alteration

---

[2]Appellant does not have direct evidence of discrimination and therefore must use the *McDonnell Douglas* framework to establish her claim of religious discrimination and/or retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

in original). Appellant's inferential case "might consist of evidence that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." *Chalmers*, 101 F.3d at 1017.

In this case, appellant has not established a prima facie case of religious discrimination. First, the record indicated that appellant was not performing her job satisfactorily. Appellant received several suspensions, and her supervisors provided detailed memoranda documenting her unsatisfactory behavior. (JA 249-59, 261-79, 329-33). Further, the record was replete with other documented complaints made by her supervisors, (JA 233, 237-38, 287-88, 292, 311-12, 324-28), including a memorandum from the Deputy Director of CBER that stated:

> I have found no mitigating circumstances which justify your blatant disobedience and insolent, disruptive behavior. On the other hand, I find numerous aggravating circumstances which warrant your suspension from duty for your misconduct. . . . *This Agency cannot allow your misconduct to continue, and I must warn you, again, that you are in jeopardy of losing your position with the FDA if you do not take appropriate actions immediately to modify your conduct to an acceptable level.*

(JA 348) (emphasis added).

Second, the cumulative force of appellant's evidence does not create an inference of religious discrimination. Appellant has not provided any evidence that she was treated differently from any other employee who had similar disciplinary and work-related problems. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 298 (4th Cir. 1998). Further, her relationship with her supervisors started out collegial and only deteriorated over time—even though her supervisors would have known from the beginning that appellant was an Orthodox Jew.[3] (JA

---

[3]Significantly, appellant listed a number of personal, rather than discriminatory or retaliatory, reasons why her relationship with her colleagues and supervisors deteriorated. (JA 37, 40-41, 43).

42-43).

Even if appellant could establish a prima facie case of discrimination, however, appellee has articulated legitimate, non-discriminatory reasons for the FDA's actions, and appellant has not shown that these reasons were false and a pretext for discrimination.[4] First, appellant's supervisors minutely detailed the reasons for her two suspensions, including appellant's refusal to write an apology letter when asked to do so by her supervisor, her refusal to leave her supervisor's office when ordered to do so, and her continual nagging.[5] (JA 249-56, 26-79, 329-33). Notably, although attempting to justify her behavior, appellant conceded that she engaged in this behavior. (JA 95, 97-99).

Second, appellant's supervisor stated that appellant was reassigned because the situation for both appellant and her supervisors had become intolerable. (JA 286-87). Appellant herself noted the tension in her department and stated that it would be better if she were moved to another department.[6] (JA 54, 286-87).

Third, the record overwhelmingly supported appellee's claim that appellant was placed on leave restriction because of her poor atten-

---

[4]Appellant argued that the district court erred in not applying the law as set forth in *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 147-49 (2000). However, even assuming appellant established a prima facie case of discrimination, the *Reeves* analysis is inapplicable because appellant has not provided any evidence that appellee's legitimate, non-discriminatory reasons were false.

[5] A.   I was just in his room nagging him.

   Q.   And was he your supervisor at the time?

   A.   Yes.

   Q.   And was that appropriate behavior for a subordinate to nag a supervisor?

   A.   It's behavior that I always exhibited.

(JA at 95).

[6]Appellant also complained that she was not given enough work in her new department. However, the record showed that appellant's new position afforded her sufficient work. (JA 192, 386).

dance record and inappropriate leave use. (JA 292, 312). Dr. Keegan, chief of the Oncology Department, wrote appellant a memorandum detailing the many problems with her attendance and leave use. (JA 357-63). This memorandum stated that appellant's work records did not account for eight and a half hours of work on many days and that for one pay period there were only four days that appellant worked a full day without taking some sort of leave. (JA 357-58). Once again, appellant did not present any evidence that this legitimate, non-discriminatory reason was false.

Finally, appellant's supervisor provided ample justification for appellant's termination. The grounds for her termination included (1) repeated failure to follow supervisory instructions, (2) repeated unauthorized absences, (3) unacceptable conduct, and (4) misuse of government equipment. (JA 726-89). In an extensive memorandum, Dr. Keegan enumerated page after page of leave and attendance violations that directly conflicted with the explicit requirements she had set out for appellant in a previous memorandum. (JA 726-71). Appellant did not present any facts showing that the copious documentation of leave and attendance abuse was false.[7] Although appellant complained that she was monitored more closely than other employees, she did not present any evidence that she was treated differently from any other employee that engaged in gross abuse of attendance and leave requirements.[8]

---

[7]Further, the record is clear that appellant's attendance and leave problems did not result from her need to take time off to observe her religious holidays. Instead, her leave and attendance problems stemmed from her refusal to ask for leave in a timely manner, her refusal to sign in and out, and her habit of leaving her office for extensive periods of time without informing anyone of her whereabouts, even after explicit instructions to remain in her office. (JA 726-89).

[8]Further, Dr. Keegan noted appellant's refusal to return government documents, including confidential documents, after ordered to do so. (JA 751-52). Dr. Keegan also documented appellant's refusal to provide an accounting of her work. (JA 752-53). Appellant did not provide any evidence that these reasons were false.

## III.

Appellant's retaliation claim is based on the same acts enumerated above and fails for the same reasons. In order to support a claim for retaliation, appellant must show: (1) that she engaged in protected activity; (2) that her employer took adverse employment action against her, and (3) that a causal connection existed between the protected activity and the adverse action. *See Lawrence v. Mars, Inc.*, 955 F.2d 902, 906 (4th Cir. 1992).

In this case, appellant claims that she engaged in protected activity by filing a claim of discrimination with the Equal Employment Office and that as a result of this claim everyone in the FDA began taking retaliatory actions against her. (JA 125). This court has found that establishing a causal connection between the filing of a claim and retaliatory action is not an onerous burden to meet. *See Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989). However, even if appellant established a prima facie case of retaliation, as fully detailed above, appellee provided legitimate, non-discriminatory reasons for the FDA's actions, and appellant has failed to show that these reasons were pretextual.

## IV.

Appellant also claims that appellee violated Title VII by failing to accommodate her religious practices. There is no dispute that appellant's religious beliefs prohibited her from working after sundown on Fridays and on religious holidays. However, appellant has not provided any evidence that the FDA's attendance policies required her to work during these times. Therefore, as a matter of law, she cannot establish a prima facie case of religious discrimination.

Title VII of the Civil Rights Act of 1964 requires an employer to make reasonable accommodations for its employees' religious observances. In relevant part, the act states:

> (j) The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably

accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

42 U.S.C. § 2000e(j) (2000). To establish a prima facie case of discrimination, an employee must establish that: "'(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996) (quoting *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985)).

All parties agree that appellant was given at least two hours leave every Friday.[9] Appellant stated that the two hour leave did not give her sufficient time to pick up Challah bread from a Jewish store.[10] However, appellant admitted that the Jewish store began making the bread on Thursday morning. Appellant stated that the store was open until 8:30 p.m. on Thursdays, and she stated that she had on occasion gone shopping on Thursday night. (JA 655-57). When asked why she could not pick up the bread on Thursday night, appellant responded:

> [The children] are starving. They want to eat and they want to do homework. They don't want to leave the house. They're very conservative. They don't want to leave the house after they get home in the evening. They get very upset when I say I want to go somewhere.

(JA 665-66).

While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences. *See Tiano v. Dillard Dep't Stores, Inc.*, 139

---

[9]The two hour Religious Compensation Time allowed appellant to leave work at 1:30 p.m. on Fridays. (JA 590-91).

[10]The district court found that the Challah bread was not required for the Sabbath. (JA 718). However, in the light most favorable to appellant, the bread was a very important part of the Sabbath meal, and it was important to buy this bread from a Jewish grocer. (JA 652, 658-59).

F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences."). In this case, appellant's own testimony confirmed that her decision to pick up the bread on Friday afternoon was simply her preference and not a religious requirement. As such, her employer did not have a duty to accommodate this preference.

Appellant also argued that the court did not take into account the many other activities that she had to complete before sundown Friday. She stated that "during Friday afternoons she need[ed] to cook any food which would be consumed in the ensuing period, bathe her children, lay out clothes for the next day, and prepare her home by selecting which appliances [would] be kept hooked up to the electricity." (Appellant's Brief at 32). However, while her religious beliefs prohibited her from working on the Sabbath, her religious beliefs did not mandate that all preparation for the Sabbath take place on Friday. While some tasks, such as bathing the children, would have to be done on Friday, other tasks, such as preparing meals and cleaning the house, could be done earlier in the week.[11] Once again, the employer does not have an obligation to accommodate appellant's preferences, only her actual religious beliefs and practices.

V.

Finally, appellant argues that summary judgment was untimely because she did not have an opportunity to depose her supervisors concerning her termination. Decisions of a trial court as to discovery issues are reviewed for abuse of discretion. *See Strag v. Board of Trustees*, 55 F.3d 943, 953 (4th Cir. 1995). The court may deny or continue a motion for summary judgment "[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition. . . ." Fed. R. Civ. P. 56(f). A party opposing summary judgment based on this rule is required to file an affidavit "specifying which aspects of discovery required more time to complete." *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).

---

[11]Appellant admitted that she could do some cooking during the Sabbath but stated that she "prefer[red] to do [her] cooking beforehand, because it's just very difficult. The food never comes out as good." (JA 25).

Appellant filed an affidavit stating that she needed to depose her supervisors concerning her termination because "[t]heir depositions may provide critical information regarding motives, facts and disputes of fact." (JA 986). However, as appellant could not produce any evidence to refute her supervisor's detailed explanation for her termination, the district court did not abuse its discretion when it did not allow additional discovery.

## VI.

In conclusion, in light of the overwhelming evidence presented by appellee justifying the FDA's employment actions against appellant, we hold that appellant failed to establish any Title VII violation.

*AFFIRMED*