JERRY E. SMITH, Circuit Judge,
dissenting:
In its well-written opinion, the majority errs in holding that our inquiry is limited *492 to the sincerity of an employee’s alleged religious belief; we must also consider whether that belief is “religious” in nature or merely a personal preference or a secular social or economic philosophy. The district court correctly found that Davis’s failure to appear for work was motivated by a personal commitment and not a religious belief protected under Title VII. The majority also mistakenly decides that accommodating Davis’s belief did not constitute an undue hardship. (I agree with the majority’s disposition of the retaliation claim.) Because I would affirm the summary judgment, I respectfully dissent.
I.
A.
The majority strays in opining that courts may not consider the religious nature of an employee’s alleged beliefs but instead must focus solely on sincerity. I have no qualm about the majority’s discussion regarding the sincerity of Davis’s belief, but that is not at issue. The county does not dispute her sincerity, and her opening brief states as much: “[SJincerity is not at issue here.”
Title VII does not protect beliefs merely because they are sincerely or strongly held.[1] Instead, it protects employees from discrimination based on their “religion,” 42 U.S.C. § 2000e-2(a)(l), defined to include “all aspects of religious observance and practice, as well as belief,” 42 U.S.C. § 2000e(j). As a result, the prima facie case for religious accommodation requires the plaintiff to show that he “had a bona fide religious belief that conflicted with an employment requirement.”[2] The district court found that Davis’s belief was not religious: “[Her] absence from work was due to personal commitment, not religious conviction”; the court found that she “did not present a conflict between religious beliefs and employment requirements; [she] presented a conflict of time.” This is the real issue presented to us on appeal.
Only a couple of sentences of the majority opinion pertain to whether Davis’s belief was “religious.” In its cursory review, the majority asserts, without analysis, that our “inquiry is limited to focusing upon the individual and whether her belief is sincere, or ‘truly held’; whether the belief itself is central to the religion, i.e., whether the belief is a religious tenet, is ‘not open to question,’ ” citing Moussazadeh v. Texas Department of Criminal Justice, 703 F.3d 781, 790 (5th Cir.2012) (Smith, J.). Not only is the holding not supported by Mous-sazadeh, but it is contrary to the plain language of Title VII and to the precedents of the Supreme Court, this court, and all of our sister circuits to have addressed this issue.
In Moussazadeh, id., the parties did not dispute that “eating kosher food constitutes a ‘religious exercise’ ” under the RLUIPA. The only issue was whether the prisoner sincerely held that religious belief. Contrary to the majority’s selective quotation of six words from its discussion of sincerity, Moussazadeh does not hold that courts cannot look into the religious character of a belief. It merely states that “while the ‘truth’ of a belief is not open to question, there remains the significant question of whether it is ‘truly held.’ ” Id. (quoting United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)).
*493 In Seeger, the Court provided further guidance on courts’ proper role in considering the religiosity of beliefs:
The validity of what [the plaintiff] believes cannot be questioned. Some theologians, and indeed some examiners, might be tempted to question the existence of the registrant’s “Supreme Being” or the truth of his concepts. But these are inquiries foreclosed to Government. As Mr. Justice Douglas stated in United States v. Ballard, 322 U.S. 78, 86 [64 S.Ct. 882, 88 L.Ed. 1148] (1944): “Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are real as life to some may be incomprehensible to others.” Local boards and courts in this sense are not free to reject beliefs because they consider them “incomprehensible.” Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious.
But we hasten to emphasize that while the “truth” of a belief is not open to question, there remains the significant question whether it is “truly held.” This is the threshold question of sincerity which must be resolved in every case.
Seeger, 380 U.S. at 184-85, 85 S.Ct. 850. In other words, courts cannot look into whether the religious belief is true — for example, whether the angel Gabriel truly appeared to Muhammad, whether the Middle Way is indeed the path to enlightenment, or whether Jesus is in fact the Christ.[3] Instead, courts are tasked with deciding not only whether the alleged belief is “sincerely held” but also “whether [the beliefs] are ... religious.” Id. at 185, 85 S.Ct. 850.
The majority holding also conflicts with the decisions of every circuit to have addressed this issue. Consistently with Seeger, the First,[4] Fourth,[5] Seventh,[6] Eighth,[7] and Tenth[8] Circuits have held *494 that courts must consider both whether a belief is religious in nature and whether it is sincerely held. No circuit has held — in a published or unpublished opinion — as the majority does today.
Even this circuit has implied that courts must consider whether the employee’s belief is religious in nature.[9] For example, in Cooper v. General Dynamics, Convair Aerospace Division, Fort Worth Operation, 533 F.2d 163 (5th Cir.1976), we chided a district court that had evaluated a plaintiffs religious belief, and we “concluded that it was irrational and specious”; we stated that such conclusions are “not for federal courts, powerless as we are to evaluate the logic or validity of beliefs found religious and sincerely held.” Id. at 166 n. 4 (emphasis added) (citing Seeger, 380 U.S. at 184-85, 85 S.Ct. 850). Although the majority cites this very language in support of its holding, again it does so having missed the very meaning of the words: We may not, as courts, consider the verity or “validity” or truth of beliefs that are found religious and sincerely held. Implicit with this statement, however, is that courts may — and must — find that those beliefs are in fact religious in nature as well as sincerely held.
For thirty years, district courts in this circuit have also considered the religious nature of beliefs when at issue in Title VII cases.[10] Therefore, not only is the majority’s opinion in conflict with the direction of the Supreme Court and the holdings of our sister circuits, but it represents a departure from longstanding Fifth Circuit practice. Thus, contrary to the majority’s holding, not only may we consider whether an employee’s belief is religious in nature under Title VII, but we must do so where, as here, it is disputed.
A belief is “religious” if it is a “sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by [ ] God.” Seeger, 380 U.S. at 176, 85 S.Ct. 850. Such a belief is “not merely a matter of personal preference, but one of deep religious conviction, ... intimately related to daily living.” Wisconsin v. Yoder, 406 U.S. 205, 216, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). These statements “define religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional views” whenever the religious nature of a belief is at issue. 29 C.F.R. § 1605.1. These include “not only traditional, organized religious such as Christianity, Judaism, Islam, Hinduism, and Buddhism, but also religious beliefs that are new, uncommon, not part of a formal church sect, only subscribed to *495 by a small number of people, or that seem illogical or unreasonable to others.” EEOC Compliance Manual § 12-I(A)(1). But, typically these beliefs concern “ultimate ideas about life, purpose, and death.” Id.[11] Therefore, to be entitled to constitutional or statutory protection, an observance, practice, or belief must be motivated by this broad definition of “religion” and not mere personal preference or secular philosophy, whether social, political, or economic.[12]
B.
Applying the proper inquiry, we must decide what practice, observance, or belief Davis claims is protected under Title VII. Then we must consider whether she produced evidence that this belief is “refi-gious” in her own scheme of things and whether it conflicted with an employment requirement.
Davis’s testimony demonstrates that neither Sabbath-day observance nor her regular attendance at church services conflicted with Fort Bend County’s requirement to work on Sunday and therefore are not at issue on appeal.[13] Instead, it was her commitment to participate in her church’s special community-service project that she claims was in conflict with her employment requirements.[14] We must therefore decide whether the record supports a finding that religious belief — rather than personal preference or secular philosophy — motivated her commitment.
Davis claims that, for three main reasons, the community-service project consti *496 tutes a religious belief: (1) Davis testifies that she has been a faithful member of her congregation for about four years before the event. In light of her obvious devotion, the only reasonable inference to be drawn from her participation in a church event is that it was motivated by a religious belief. (2) Davis — contrary to the majority’s assertion — did not testify that she needed to be off work “as a religious matter.” She did, however, refer to the community service as a religious commitment in her complaint, and once in her testimony as a “Sunday religious activity.” This alone, her reasoning continues, is sufficient to create a genuine issue of material fact regarding whether she was motivated by a bona fide religious belief. (3) Alternatively, Davis claims that her Christian belief in service and “feeding the community” required her participation in the Sunday service event.
First, Davis improperly focuses on the nature of the activity rather than the motivation behind it.[15] Depending on what motivated it, the very same activity can be both protected and unprotected under Title VII. One might be á vegetarian because one adheres to the Jain concept of Ahisma, requiring nonviolence. Or, one might be a vegetarian because one merely believes it to be the healthier food option. The former, motivated by a religious belief, is protected by Title VII; the latter, a personal preference, is not.
Similarly, even an activity ostensibly connected with a church or associated with a religious practice might not be motivated by religious belief and, therefore, would remain unprotected. For example, attending Sunday Mass out of obedience to God’s commands is protected religious belief, but attending Mass because one enjoys listening to the choir is not.[16] Likewise, volunteering at a Christmas party in order to worship or celebrate the Christ Child is protected, but doing so out of a sense of social or familial obligation is not.[17] Just because an activity involves an activity or practice that is often associated with religion or religious belief does not end the inquiry: A reasonable jury must be able to find that a religious belief conflicted with the employment requirement.
In other words, the fact that Davis— devoted as she may be — participated in an activity associated with her church, at the request of her pastor, does not mean the activity necessarily constitutes a religious practice, observance, or belief.[18] Her participation in that activity must be motivated by her own, personal religious belief. Certainly, if she agreed to babysit her pastor’s children at the church as a per *497 sonal favor to him, Title VII would not apply, no matter her devotion to her faith. By that same token, the court must consider whether Davis produced evidence that her 'personal religious belief — and not necessarily the religious doctrine or tenets of her church or religion as broadly understood — required her participation at the groundbreaking ceremony.
Considering the record as a whole, Davis has failed to provide sufficient evidence to create a genuine issue of material fact. Although she did refer to the community service as a religious commitment in her complaint and once as a “Sunday religious activity” in her testimony, “an employee is not permitted to redefine a purely personal preference or aversion as a religious belief.”[19] Mere conclusional language that the belief is “religious,” without more, is insufficient.[20] Even if one refers to his personal preference for eating cat food as a “personal religious creed,” for example, merely terming the activity or belief as such cannot make “religious” what is not.[21]
Instead, the plaintiff must produce evidence of the motivation behind the practice, observance, or belief that is religious in nature. This is not an onerous or difficult task; testimony by the plaintiff describing this motivation in terms meeting the broad standard for what is “religious” will usually suffice to survive summary judgment. For example, if one were to testify that he believes the goddess Bastet commanded him to eat cat food in worship of her divinity, and he sincerely holds that belief, he has provided sufficient evidence of a bona fide religious belief. This is so even if Bastet did not in fact give that command and the record reflects that this is not a generally recognized tenet of Bas-tet worship.[22] Although this requirement *498 might often go undisputed or be easily met in most cases,[23] that fact does not absolve the plaintiff from bearing his burden.[24]
Davis did not testify that she “needed” to attend her church’s community service project because of “religious” motivation, even under the broad definition of “religious.” She states only that her “Pastor requested all members participate in this highly anticipated community service event,” that she “was in charge of the volunteer program that was responsible for feeding three hundred (300) people,” and that her “church depended on her to be there.” In other words, Davis “needed” to attend the community service project on Sunday, July 3 not because her personal conception of religion required her attendance but because she had made a personal, social commitment to her pastor and fellow church members who were depending on her being there.
Based on this record, a reasonable jury could not conclude that Davis was motivated by a bona fide religious belief. It was her personal preference to prioritize her social commitment to her pastor over her commitment to her employer. Such a personal preference does not constitute a bona fide religious belief as a matter of law, and Title VII does not require an employer to accommodate it.
In the alternative, Davis argues for the first time on appeal that her faith requires that she follow Christ’s example in “feeding the community.” This, she claims, was her motivation in attending the community service project and constitutes a bona fide religious belief. This notion too fails. Assuming that the record supported that she was motivated by this religious belief, Davis has failed to provide evidence that her religious belief in “feeding the community” actually conflicted with her employment requirement. Even if her religion required her to feed the community, Davis has failed to show that it required her to do so on Sunday, June 3.[25]
In Tiano v. Dillard Department Stores, Inc., 139 F.3d 679, 682 (9th Cir.1998), the court held that an employer did not have to accommodate an employee’s religious belief that she needed to go on a pilgrimage to Medjugorje because the evidence presented evinced no temporal mandate requiring the pilgrimage take place at the time she left. “Otherwise, the employer is forced to accommodate the personal preferences of the employee — the timing of the trip. Title VII does not protect secular preferences.” Tiano, 139 F.3d at 682. The court held that the mere statement that she “needed” to go was insufficient without corroborating evidence that the timing was motivated by her religious belief and because the record reflected that *499 there were other opportunities serve as a pilgrim that did not conflict with her work schedule.[26]
Likewise, in Dachman v. Shalala, 9 Fed.Appx. 186, 192 (4th Cir.2001), the court held that an employer did not have to accommodate a Jewish employee who claimed she needed leave every Friday to pick up Challah bread for the Sabbath because it was merely her preference to do so on Friday. Although this was inconvenient for her to purchase the bread on Thursday, the employer did not have to accommodate her personal preferences in opting for a Friday pickup.[27]
Similarly, although her personal religious belief might require her to feed the community, Davis has not put forward any evidence that there was a temporal mandate for her to participate in this service on this particular Sunday. Undoubtedly, she would have had other opportunities to feed the community at times that would not conflict with her work schedule. Also, her testimony suggests that it was her preference to feed the community at that community service event because the church was depending on her after she had volunteered to participate. Therefore, she “[can] not satisfy one crucial element of her prima facie case: conflict between her religious belief and employment duties.”[28]
Because Davis fails to establish a prima facie case, the district court correctly granted summary judgment. Davis has not provided evidence establishing a religious belief that was in conflict with an employment requirement. Instead, the record supports only the conclusion that Davis’s personal commitment to her pastor kept her from reporting for work on Sunday, July 3. Because she was not motivated by religious belief, or a religious belief that conflicts with employment requirements, Title VII does not require Fort Bend County to accommodate her conflict.
II.
Even assuming Davis created a genuine issue of material fact regarding whether her “religions” belief conflicted with an employment requirement, the majority errs because accommodating Davis’s belief constituted an undue hardship. The majority relies heavily on the fact that Davis found a volunteer replacement in holding there to be no undue hardship as a matter of law. The majority maintains that this alone is enough to establish a dispute of material fact to survive summary judgment. In doing so, however, the majority overlooks that the existence of a volunteer alone is insufficient if even the use of the volunteer would have reasonably resulted in “decreased efficiency, economic loss, and increased risk.”[29]
*500 More specifically, the majority does not examine the qualifications of the proffered volunteer. Not any volunteer that a plaintiff can convince to substitute will be sufficient to defeat a defendant’s establishment of undue hardship.[30] Even the majority would agree that any surgeon demanding accommodation cannot merely substitute the hospital janitor, no matter how willing he is to volunteer. The fact that Davis found a volunteer, although relevant, does not end our inquiry. We must consider whether he is qualified such that the substitution does not constitute only a de min-imis cost to the employer.
Davis relies solely on the fact that her volunteer had occasionally filled in for her in the past as evidence that she was qualified to fill in for her on Sunday, July 3. That argument is unavailing, however, because (1) Fort Bend County’s IT department was engaged in an unusually large and complex undertaking with a strict deadline and little room for error correction that (2) in its reasonable judgment required the attendance and support of all departmental supervisors. Davis does not contend, nor is their evidence to support, a finding that her volunteer was either a qualified supervisor or had filled in for her in the past during a comparably difficult managerial task.
Both sides agree that the move into the new courthouse was an extra-ordinary event within the IT department. It represented a huge undertaking that required months of planning and — as Davis has testified — many long days and nights of preparation by supervisors in the preceding weeks in order to ensure a smooth transition.[31] The IT department had only the extended Fourth of July weekend to complete the transfer and installation of all IT systems within the new courthouse and to ensure that they were functional before the start of business the following week.
Because of the importance and enormity of the task at hand, all supervisors were required to be present to minimize the risk of failure. The director of the IT department, testified via affidavit that he instructed Ford to deny Davis’s request to be excused on Sunday because the “absence of a supervisor ... would have required other employees to assume a disproportionate workload.” “[Her] role as Desktop Support Supervisor during the holiday weekend move to the Justice Center was vital to the efficiency of the move, her absence increased the risk that the computers would not be installed and functional when the Court system opened for business.... ” “[B]ecause of the risk and the enormity of the tasks to be completed in such a short amount of time,” all members of the management team and supervisors were required to work throughout the weekend. And, in fact, all of those managers and supervisors did show up to work throughout the weekend, except for Davis.
Davis does not dispute that her volunteer was not a supervisor but merely a subordinate member of the IT staff. Although the volunteer had occasionally filled in for Davis, the record contains no evidence that she had either filled-in for *501 Davis during a comparably complex managerial assignment or that she had similar experience or qualifications in tackling such a task. Therefore, Davis did not provide a qualified volunteer to cover her absence.
With this testimony, Fort Bend County met its responsibility to produce evidence that this action created an undue burden. In response, Davis failed to show a genuine dispute of material fact because she failed to provide evidence of a volunteer with similar job qualifications or that the absence of a supervisor did not increase the risk of economic loss or efficiency.[32] Although reviewing courts must “draw all reasonable inferences in favor of the non-moving party,” courts cannot invent out of whole cloth evidence that if in the record would support the nonmoving party’s position or draw inferences in favor of the nonmoving party that are unreasonable or unsupported by the evidence actually in the record.[33]
Any inference that Davis’s volunteer was qualified to replace her in the monumental managerial task is unreasonable based on this record. Replacing a supervisor with an employee who is neither a supervisor nor has similar job qualifications for the task at hand created an increased risk to the county. This is, as a matter of law, a greater than de minimis injury.[34] Therefore, accommodation constituted an undue hardship, and the district court properly granted summary judgment on that ground.
Because I would therefore affirm the judgment in its entirety, I respectfully dissent from the conscientious decision of the majority.

. Cf. EEOC Compliance Manual § 12 — 1(A)(1) (EEOC 2009), available, at 2008 WL 3862096.

. Weber v. Roadway Exp., Inc., 199 F.3d 270, 273 (5th Cir.2000); see also EEOC v. Abercrombie & Fitch Stores, Inc., 731 F.3d 1106, 1122 (10th Cir.2013).

. See Ballard, 322 U.S. at 86-87, 64 S.Ct. 882 (“The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When triers of fact undertake that task, they enter a forbidden domain.”).

. See, e.g., EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir.2002) ("In order to satisfy this element, the plaintiff must demonstrate both that the belief or practice is religious and it is sincerely held.”); cf. Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 130-32 (1st Cir.2004).

. See, e.g., Dachman v. Shalala, 9 Fed.Appx. 186 (4th Cir.2001) ("While an employer has a duty to accommodate an employee’s religious beliefs, the employer does not have a duty to accommodate an employee’s preferences.”).

. See, e.g., Adeyeye v. Heartland Sweeteners, LLC, 721 F.3d 444, 448 (7th Cir.2013) (“[T]he belief necessitating the accommodation must actually be religious.”), EEOC v. Ilona of Hungary, Inc., 108 F.3d 1569, 1575 (7th Cir.1996) ("In order to establish a prima facie case of religious discrimination, a plaintiff must show that the observance or practice conflicting with an employment requirement is religious in nature....”); Redmond v. GAF Corp., 574 F.2d 897, 901 n. 12 (7th Cir.1978) (“We believe the proper test to be applied to the determination of what is "religious” under § 2000e(j) can be derived from the Supreme Court decisions in [Welsh ], and [Seeger], i.e., (1) is the ‘belief’ for which protection is sought ‘religious’ in person’s own scheme of things, and (2) is it 'sincerely held.’ ”).

.See, e.g., Vetter v. Farmland Indus., Inc., 120 F.3d 749 (8th Cir.1997) ("An employer need not accommodate a purely personal preference.” (internal quotation marks omitted)); Brown v. Gen. Motors Corp., 601 F.2d 956, 959 (8th Cir.1979) (holding that Title VII "does not require an employer to reasonably accommodate the purely personal preferences of its employees.”).

. See, e.g., EEOC v. Abercrombie & Fitch Stores, Inc., 731 F.3d 1106, 1119 (10th Cir.2013) ("[Bjecause religious beliefs have a distinctive content related to ultimate ideas about life, purpose, and death, logically, even if an applicant or employee claims to be acting for 'religious' reasons, if those reasons actually do not pertain to such ultimate ideas, then that person's conduct would fall outside the protective ambit of Title VII — viz., the conduct would not truly relate to religious matters.”).

. See, e.g., Anderson v. Browning-Ferris, Inc., 29 F.3d 623, *2 & n. 2 (5th Cir.1994) (per curiam) (unpublished); Eversley v. MBank Dall., 843 F.2d 172, 175 n. 2 (5th Cir.1988); Brown v. Dade Christian Schs., Inc., 556 F.2d 310, 324 (5th Cir.1977) (en banc) (Roney, J., dissenting); Theriault v. Carlson, 495 F.2d 390, 394-95 (5th Cir.1974).

.See, e.g., Brown v. Pena, 441 F.Supp. 1382, 1385 (S.D.Fla.1977), aff'd, 589 F.2d 1113 (5th Cir.1979); see also Toronka v. Cont’l Airlines, Inc., 649 F.Supp.2d 608, 611-12 (S.D.Tex.2009) ("Initially, the Court must determine whether Tornoka’s 'moral and ethical belief in the power of dreams based on his religious convictions and traditions of his national origin of African descent’ is a religious belief.”); McCrory v. Rapides Reg’l Med. Ctr., 635 F.Supp. 975, 979 (W.D.La.1986).

.See also Abercrombie, 731 F.3d at 1119; Brown, 556 F.2d at 324 (Roney, J., dissenting) ("[A]s the very cases cited by the plurality demonstrate, the ‘religious’ nature of a belief depends on (1) whether the belief is based on a theory 'of man’s nature or his place in the Universe,' (2) which is not merely a personal preference but has an institutional quality about it, and (3) which is sincere.” (citations omitted)).

.See Yoder, 406 U.S. at 216, 92 S.Ct. 1526 ("[I]f the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious....”); Anderson, 29 F.3d at *2 ("The Supreme Court has characterized a 'religious’ belief entitled to constitutional or statutory protection as 'not merely a matter of personal preference, but one of deep religious conviction, shared by an organized group, and intimately related to daily living.’ ” (quoting Yoder, 406 U.S. at 216, 92 S.Ct. 1526)); see also Brown, 441 F.Supp. at 1385 (“Plaintiff’s ‘personal religious creed’ concerning Kozy Kitten Cat Food [that it contributed to his well-being] can only be described as such a mere personal preference and, therefore, is beyond the parameters of the concept of religion as protected by the constitution or, by logical extension, by 42 U.S.C. § 2000e et seq.”), aff'd, 589 F.2d 1113 (5th Cir.1979); Bellamy v. Mason's Stores, Inc., 368 F.Supp. 1025, 1026 (E.D.Va.1973) (holding that the Ku Klux Klan is not a religion under the meaning of Title VII because the "proclaimed racist and anti-semitic ideology” has “a narrow, temporal and political character inconsistent with the meaning of ‘religion’ as used in § 2000e.”), aff'd, 508 F.2d 504 (4th Cir.1974).

. Davis testified that she first learned in March or April that the big move into the new courthouse would take place over the long Independence Day weekend, including Sunday, July 3. When she first learned of the move, she testified that “[she] had no conflict.”

. It was not until a week before the move that she realized that she did not wish to work the following Sunday; her pastor had requested all members participate in the community service event accompanying the ground-breaking for the new chapel on that date, and Davis committed to head the volunteer program tasked with feeding the community throughout the event. She informed the county of this conflict two days before the move.

. Cf. Cooper, 533 F.2d at 168 ("If the employee’s conduct is religiously motivated, his employer must tolerate it unless doing so would cause undue hardship to the conduct of his business.”).

. See, e.g., Anderson, 29 F.3d at *2 n. 2 (relating how the plaintiff felt obligated to attend his church service not because of Sabbath-day worship but in order to retain his position as usher and trustee of the church).

. See, e.g., Wessling v. Kroger Co., 554 F.Supp. 548, 552 (E.D.Mich.1982) (finding that a plaintiff's request to volunteer at a Christmas party was "not a religious observance protected by Title VII” because "[i]t was family oriented, a family obligation, not a religious obligation.”).

.Abercrombie, 731 F.3d at 1119 ("[A]n applicant or employee may engage in practices that are associated with a particular religion, but do so for cultural or other reasons that are not grounded in religion. If so, an employer’s discrimination against that individual for engaging in that practice ... would not contravene Title VII’s religion-discrimination provisions. This is true of course because, despite the practice’s customary association with religion, the applicant’s or employee’s motivation for engaging in the practice would not be religious.”).

. Reed v. Great Lakes Cos., 330 F.3d 931, 935 (7th Cir.2003); see also Seshadri v. Kasraian, 130 F.3d 798, 800 (7th Cir.1997) ("He claims that this is a religious creed, and he appeals to the provision of Title VII that forbids discrimination on grounds of religion. He refuses, however, to identify the religion. He claims a right not to do so, pointing out that government has no right to require a person to state his religious beliefs or affiliations. True enough; but a person who seeks to obtain a privileged legal status by virtue of his religion cannot preclude inquiry designed to determine whether he has in fact a religion.”).

. See Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 343 (5th Cir.2007) (“[A] party cannot defeat summary judgment with con-clusory allegations, unsubstantiated assertions, or only a scintilla of evidence.” (internal quotation marks omitted)); Hussein v. The Waldorf-Astoria, 134 F.Supp.2d 591, 597 (S.D.N.Y.2001) (“[Plaintiff] offers only a con-clusory assertion that his religion required him to wear a beard.); cf. Pedreira v. Ky. Baptist Homes for Children, Inc., 579 F.3d 722, 728 (6th Cir.2009) ("Pedreira has not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion.”).

. See Brown, 441 F.Supp. at 1384-85; see also Seshadri, 130 F.3d at 800; Hussein, 134 F.Supp.2d at 597 ("Title VII does not require the accommodation of personal preferences, even if wrapped in religious garb.”).

. See Seshadri, 130 F.3d at 800 ("It is true that the EEOC, following [Seeger], does not think that the plaintiff in a case of religious discrimination must be a member of an authorized church or subscribe to its full menu of orthodox beliefs. We agree. For otherwise Jesus Christ, a heterodox Jew, could not be regarded as having been a victim of religious persecution. Heretics are a principal target of religious persecution.”); EEOC v. Red Robin Gourmet Burgers, Inc., No. C04-1201JLR, 2005 WL 2090677, at *3-4 (W.D.Wash.2005) (holding that an employee sufficiently established a bona fide religious belief even though the record reflected that the belief lacked scriptural or historical support in the practice of Kemetecism); see also A.A. v. Needville Indep. Sch. Dist., 611 F.3d 248, 261 (5th Cir.2010) ("[T]he guarantee of free exercise is not limited to belies which are *498 shared by all of the members of a religious sect.” (internal quotation marks and citation omitted)); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee.”).

. See EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico, 279 F.3d 49, 56 (1st Cir.2002).

. Neely v. PSEG Tex., Ltd. P'ship, 735 F.3d 242, 246 (5th Cir.2013) ("[Tjhough the AD AAA makes it easier to prove a disability, it does not absolve a party from proving one.”).

.See, e.g., Anderson, 29 F.3d at *2-3; Bush v. Regis Corp., 257 Fed.Appx. 219, 221-22 (11th Cir.2007) (“Bush argues that the Sunday shift prevented her from doing field service with her family, which constituted a bona fide religious belief. The record, however, indicates that field service was not required to be performed on Sundays; rather, that was the day Bush and her family wished to perform field service.”).

. Tiano, 139 F.3d at 682-83 (“She offered no corroborating .evidence to support the claim that she had to attend the pilgrimage between October 17 and 26. For example, she did not testify that the visions of the Virgin Mary were expected to be more intense during that period. Nor did she suggest that the Catholic Church advocated her attendance at the particular pilgrimage. In short, her lone unilateral statement that she 'had to be there at that time’ was her only evidence.”).

. Dachman, 9 Fed.Appx. at 192. ("While an employer has a duty to accommodate an employee’s religious beliefs, the employer does not have a duty to accommodate an employee’s preferences. In this case, appellant’s own testimony confirmed that her decision to pick up the bread on Friday afternoon was simply her preference and not a religious requirement. As such, her employer did not have a duty to accommodate this preference.” (citing Tiano, 139 F.3d at 682)).

. Tiano, 139 F.3d at 683; see also Dachman, 9 Fed.Appx. at 192.

. Brener v. Diagnostic Ctr. Hosp., 671 F.2d 141, 146 (5th Cir.1982) (stating that the proposed solution of having another employee *500 substitute had resulted in decreased efficiency).

. See Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 84, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977); see also id. at 85-86, 90 n. 4, 92 n. 6, 97 S.Ct. 2264 (Marshall, J., dissenting) (quoting the EEOC example of undue hardship relied upon by the majority as “where the employee's needed work cannot be performed by another employee of substantially similar qualifications during the period of absence” (emphasis added)).

. Davis testified that she worked every weekend for about two or three months in preparation for the move.

. Although the move occurred without any significant issues and employees were released early on Sunday as a result, we cannot allow hindsight bias to cloud our analysis. Instead, we must consider whether accommodation posed an increased risk to the employer ex ante, even if that risk did not materialize ex post. "Title VII does not require an employer to actually incur accommodation costs before asserting that they are more than de minimis." Bruff v. N. Miss. Health Servs., Inc., 244 F.3d 495, 501 (5th Cir.2001); see also Weber v. Roadway Exp., Inc., 199 F.3d 270, 274 (5th Cir.2000) (holding that the "mere possibility of an adverse impact ... is sufficient to constitute an undue hardship”).

. See Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir.2007) (“In marshaling the facts for this purpose, we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however that we ought to draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective.” (citation omitted)); cf. Weber v. Roadway Exp., Inc., 199 F.3d 270, 274 (dismissing the argument that the district court failed to view all facts and inferences in the light most favorable to the nonmovant by accepting the employer's hypotheticals "regarding the effects of accommodation”).

.See Trans World Airlines, 432 U.S. at 84, 97 S.Ct. 2264; Weber, 199 F.3d at 275 (affirming summary judgment because the only suggested accommodation "would impose more than a de minimis cost”).